## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Jon Hanson,

          Plaintiff,

v.

Loparex Inc., a Delaware corporation, and
Loparex LLC, a Delaware limited liability
company,

          Defendants,
          Counterclaimants and
          Third Party Plaintiffs,

v.

Mondi Packaging Akrosil, LLC, a corporation,
Mondi Packaging Minneapolis Inc., a
corporation,

          Third Party Defendants.

Court File No. 09-CV-1070
(MJD/SRN)

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

---

## INTRODUCTION

On June 30, 2006, plaintiff Jon Hanson entered into a three year employment agreement with defendant Loparex Inc., under which Hanson was to serve as the 3M Global Account Manager for Loparex Inc. working at Loparex Inc.'s Hammond, Wisconsin facility.  In August 2007, Loparex Inc. relieved Hanson of all of his responsibilities, and directed that for the remainder of the Employment Agreement Hanson not report to Loparex Inc.'s Hammond, Wisconsin facilities to work, and that he provide no services of any nature to or on behalf of the company, and have no contact with any Loparex Inc. customer, unless specifically requested to do so by Loparex Inc.'s

President.   From August 9, 2007, to June 30, 2009, the termination date of the Employment Agreement, Loparex Inc. never requested that Hanson provide any services to or on behalf of Loparex Inc.  From August 9, 2007 to June 30, 2009, Hanson in fact provided no services for Loparex Inc., he had no contact with Loparex Inc.'s customers, and he was not provided with any documentation or information by Loparex Inc. with respect to its business operations.

Hanson's Employment Agreement with Loparex Inc. contains a non-compete provision purporting to preclude Hanson from competing with the company "for a period of twenty-four (24) months after the cessation of his employment or service with the company."  Because he has not rendered any service to the company since August 9, 2007, the non-compete, by its terms, terminated on August 9, 2009.

Furthermore, under Wisconsin law, non-compete provisions are *prima facie* suspect, and if any part of a non-compete covenant is unreasonable or overly broad, the entire covenant is void and unenforceable.  Here, Loparex Inc.'s non-compete is overly broad and unenforceable as a matter of law.  By its terms, the non-compete precludes Hanson from accepting employment not only in a sales position, the job that he held at Loparex Inc. before he was instructed not to provide further services to the company, but also in *any* employee capacity.  By its terms, the non-compete also precludes Hanson from accepting employment with a competitor anywhere in the world where Loparex Inc. does business, regardless of the geographic area that Hanson actually worked in for Loparex Inc.  The non-compete also precludes Hanson from soliciting business from any customer with whom he had "contact" at Loparex, regardless of whether he had had

substantive dealings with, or had received confidential information about, the customer. The Wisconsin courts have held similar restrictions as overly broad, thus rendering the entire non-compete unenforceable.

Finally, under Wisconsin law non-competes are enforceable only where the employee presents a substantial risk either to the employer's relationships with its customers or with respect to confidential business information.  Here, as Hanson has had no contacts with Loparex Inc.'s customers or received any business information, let alone any confidential business information, for the last two years, enforcement of the non-compete is not necessary for Loparex Inc.'s protection.

Hanson is entitled to summary judgment declaring the non-compete is void and unenforceable under Wisconsin law, and that alternatively, he has fulfilled his obligations thereunder.

## STATEMENT OF FACTS

Jon Hanson ("Hanson") is a 42 year old Wisconsin resident, and the father of three children.  (Declaration of Jon Hanson (hereafter "Hanson Dec."), ¶¶ 1-2).  He is the sole breadwinner for his family.  *Id.*

### The Douglas-Hanson Company

In 1973, Chris Hanson, Jon Hanson's father, formed The Douglas-Hanson Co., Inc. ("Douglas-Hanson"), a Wisconsin corporation located in Hammond, Wisconsin. (Hanson Dec., ¶ 4).

Hanson graduated from high school in 1985.  He did not attend college.  He took a job with his father's company in 1991.  Hanson worked for Douglas-Hanson for fifteen years, from 1991 until the company's sale in 2006 to Loparex U.S.A. Holding, Inc.  He started as a machine operator and became a salesperson approximately two years later.  In 1998, he was promoted to Vice-President of Marketing. Hanson became the Vice-President of Marketing and Sales in about 2003.  His last position with the company was President.  He held that position from 2005 until the company's sale.  (*Id*., ¶ 5).

As the President of Douglas-Hanson, Hanson had principal responsibility for overseeing sales and marketing and manufacturing.  During the time that Hanson was President, his father, Chris Hanson, had principal responsibility for overseeing the company's finances.  (*Id*., ¶ 6).

As of 2006, Douglas-Hanson's business involved the manufacture of silicone release liners used in a variety of applications.  At that time, Douglas-Hanson had approximately 200 employees, approximately 150 of which were employed in manufacturing positions. Douglas-Hanson was generating sales of approximately $75,000,000 a year, approximately 80% of which were concentrated in approximately 15 customers, of which Avery Dennison, 3M and Flexcon were the largest.  During the period of time that Hanson was the President of the company, he had little day-to-day contact with these customers.  (*Id*., ¶ 7).

**Sale of Douglas-Hanson to Loparex Inc.**

In the fall of 2005, Douglas-Hanson was contacted by Loparex U.S.A. Holding, Inc. concerning the possible purchase of Douglas-Hanson.  Following several months of

negotiations, on June 26, 2006, a Stock Purchase Agreement was entered into between Chris Hanson, Douglas-Hanson, and Loparex U.S.A. Holding, Inc., pursuant to which Loparex U.S.A. Holding, Inc. purchased all of Chris Hanson's stock in Douglas-Hanson. (*Id.*, ¶ 8).  At all times from its formation in 1973 until the date of its sale to Loparex U.S.A. Holding, Inc. on June 26, 2006, Chris Hanson was the sole shareholder of Douglas-Hanson.  (*Id.*, ¶ 4).

In connection with the negotiations leading to the sale, Jack Taylor, the President and Chief Executive Officer of Loparex Inc., a subsidiary of Loparex U.S.A. Holding, Inc., advised Hanson that he wanted him to stay on with the company following its acquisition by Loparex U.S.A. Holding, Inc.  Hanson eventually came to an agreement with Taylor, and on June 30, 2006, Hanson and Loparex Inc. entered into an Employment Agreement.  (*Id.*, ¶ 9).  (A copy of the Employment Agreement is attached as Exhibit A to the Declaration of Jon Hanson.)  The Employment Agreement provided that Hanson would serve as the 3M Global Account Manager for three years, or to June 30, 2009, subject to Loparex Inc.'s rights to terminate any employment as provided in the Agreement.[1]

---

[1] Following the acquisition by Loparex U.S.A. Holding, Inc., Loparex Inc. took over the Douglas-Hanson operations.  On a date that is not known to Hanson, Loparex Inc. was reorganized as Loparex, LLC, and in connection with the reorganization, Loparex, LLC assumed all of the contractual obligations of Loparex Inc., including Hanson's Employment Agreement with Loparex Inc.  To avoid confusion, however, the entity that is a party to the Employment Agreement is referred to as Loparex Inc.

**Hanson's Employment at Loparex Inc.**

Following the acquisition of Douglas-Hanson by Loparex U.S.A. Holding, Inc.,
Hanson took the position of 3M Global Account Manager for Loparex Inc.  From
approximately July 1, 2006 to August 8, 2007, Hanson worked full-time for Loparex Inc.
in that position.  Pursuant to his Employment Agreement, Hanson was to be "based in
Hammond, Wisconsin, at either [his] home or the plant location directed by [Loparex
Inc.'s] President and Chief Executive Officer."  His duties required a substantial amount
of international communications and travel.  While 3M is located in St. Paul, Minnesota,
because Hanson's role was to develop international business, less than 10% of his time
was spent in Minnesota.  Hanson was successful in his new position, growing 3M's
business by approximately 15% that year, while Loparex Inc. as a whole actually lost
market share during that period.  (*Id.*, ¶¶ 10-11).

Between July, 2006 and August, 2007, Hanson voiced a number of concerns to
Taylor and others in management at Loparex Inc., concerning the direction of the
company, and certain actions that the company had taken with which Hanson disagreed.
Hanson's concerns were apparently unwelcome.  On August 6, 2007, at a meeting with
Taylor and Jim Miksta, the Senior Vice President of Sales and Marketing for Loparex
Inc., Taylor told Hanson that he wanted Hanson to leave the company.  (*Id.*, ¶ 12).

The day after meeting with Taylor, Hanson advised him that he did not intend to
voluntarily leave his employment, and that he intended to honor the terms of his
Employment Agreement.  (*Id.*, ¶ 12).  In response, Taylor sent Hanson a letter dated

August 8, 2007 (*see* Ex. B to Hanson Dec.) directing Hanson to stay home and have no further contact with Loparex Inc. or its customers.  The letter provides, in part:

> I will continue to explore whether it is most appropriate to terminate your employment for cause or to permanently alter your employment duties during the remainder of the Employment Agreement.  I anticipate that I will have a follow up discussion with you on these subjects in the course of making that determination.  In the meantime, as provided in Article I, paragraphs 2 (second sentence)[2] and 8[3] of the Employment Agreement, I relieve you of your current duties and direct that you work exclusively from your home in Hammond, Wisconsin.  Until further notice, you will be responsible for special projects assigned at my direction.  While you continue to be employed, I expect you will devote your entire business time, attention, skill and energy exclusively to the business of Loparex, will use your best efforts to promote the success of Loparex's business, and will cooperate fully with management of Loparex in the advancement of the best interests of Loparex.  To that end, I expect you to be available at your home during normal business hours to accept and perform special projects assigned by me or by others at my direction.  *Unless and until I expressly state otherwise, you are directed to have no contact with 3M or with any other customer of or supplier to Loparex, and you are directed to have no business contact with any employee of Loparex other than those who contact you at my direction.*

(Emphasis added.)

In accordance with Taylor's directive, beginning on August 9, 2007, Hanson remained at his home in Hammond, Wisconsin, waiting for Taylor to contact him with "special projects" to perform for Loparex Inc.  From August 9, 2007, until June 30, 2009, the termination date of the Employment Agreement, however, Hanson was not asked by

---

[2] The second sentence of paragraph 2 reads: "The Company shall also be entitled to choose to pay Employee his salary and benefits during the Term without assigning particular duties commensurate with those typically performed by the Employee."

[3] Paragraph 8 requires "[t]he employee will be based in Hammond, Wisconsin at either the Employer's home or the plant."

Loparex Inc. to perform a single project for the company.  In fact, from August 9, 2007 to June 30, 2009, Hanson did not receive a single telephone call from Loparex Inc. personnel; he did not perform any services for Loparex Inc.; he did not have any substantive business contacts with any customer of Loparex Inc.; and he did not receive any financial statements, strategic plans, new product release information, or any other written materials from Loparex Inc. concerning its operations.  (Hanson Dec., ¶ 13).

On or about August 12, 2007, after Taylor had directed Hanson to perform no services for Loparex Inc. unless requested, Taylor provided him with a proposed Separation Agreement.  The proposed Separation Agreement provided that Hanson would resign his employment at Loparex Inc. effective August 31, 2007, but that he would be available to consult with Loparex Inc. until August 31, 2011, during which period he would be prohibited from competing with Loparex Inc.  Hanson refused to sign the proposed Separation Agreement.  While he had several other discussions with Taylor thereafter concerning termination of his employment with Loparex Inc., the two were unable to agree on the terms of a separation.  Accordingly, from August 2007 to June 30, 2009, Hanson remained at home in Hammond, Wisconsin, and provided no services whatsoever to Loparex Inc. during the period.[4]  During that period, however, Loparex

---

[4] In the spring of 2008, Hanson became aware that Loparex Inc. had appointed a new Chief Executive Officer, Michael Apperson. Hanson requested the opportunity to meet with Apperson to discuss his situation at Loparex Inc.  In early June, 2008, Hanson met with Apperson in Chicago, Illinois.  A month or two later, however, Apperson advised Hanson that there was no position for Hanson at Loparex Inc.  (Hanson Dec., ¶ 15). Shortly before his meeting with Apperson, Hanson contacted an individual at Avery Dennison, and an individual at 3M, to ask if he could use them as references in his

Inc. continued to pay Hanson's salary as required by the Employment Agreement.  (*Id.*, ¶ 14).

In or about March of 2009, Hanson was approached by Mondi Akrosil, LLC, a company that, like Loparex Inc., is also involved in the manufacture of silicone release liners.  Mondi offered Hanson a job as a salesperson for the company.  Hanson accepted Mondi's offer and began work for the company on August 10, 2009.  (*Id.*, ¶ 17).[5]

## ARGUMENT

### I.      SUMMARY JUDGMENT STANDARD

#### A.      Standard for summary judgment.

A motion for summary judgment must be granted if the evidence and affidavits submitted to the court "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A fact is material only when its resolution affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  *See also Kells v. Sinclair Buick-GMC Truck, Inc.*, 210 F.3d 827, 834 (8th Cir. 2000) ("Summary judgment is an appropriate remedy despite

---

meeting with Apperson.  (*Id.*, ¶ 16).  Hanson had no substantive business communications with these individuals at that time, or at any other time after August 9, 2007, when he was instructed by Loparex to remain at his home in Hammond, Wisconsin. (*Id.*)

[5] By letter dated June 26, 2009, Loparex was advised Hanson had accepted employment with Mondi, and that he would commence employment with the company on August 10, 2009.  (*See* Ex. A to Declaration of Michael H. Streater (hereafter, "Streater Dec.")).  While Loparex Inc. has asserted a counterclaim against Hanson for breach of his Employment Agreement, Loparex Inc. has taken no action to enjoin Hanson from commencing or continuing his employment at Mondi.

factual discrepancies unless genuine issues of *material* fact remain.") (emphasis in original.)  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Anderson*, 477 U.S. at 252.

To avoid summary judgment, the non-moving party cannot rely on mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.  *Mayard v. Hopwood*, 105 F.3d 1226, 1228 (8th Cir. 1997) (citing Celotex, 477 U.S. at 322).  "[A] complete failure of proof regarding an essential element renders all other facts immaterial."  *Dominium Mgmt. Servs. Inc. v. Nationwide Housing Group*, 986 F. Supp. 578, 581 (D. Minn. 1997) (citing *Celotex*, 477 U.S. at 322-23).

## II.   WISCONSIN LAW GOVERNS THE ENFORCEABILITY OF THE NON-COMPETE AGREEMENT

While the Employment Agreement provides that any dispute arising thereunder be brought in the courts of Hennepin County, Minnesota, or, in the United States District Court for the District for Minnesota (*see* Employment Agreement at 7, ¶ X), the Agreement does not contain a choice of law provision.  As a result, this Court must first determine which state's law applies to the non-compete.

Generally, the forum state's conflict laws determine which body of substantive law will apply to a dispute.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  *See also Minnesota Mining and Mfg. Co. v. Kirkevold,* 87 F.R.D. 324, 330-32

(D. Minn. 1980) (a federal district court applies the conflict of law principles of the state in which it sits).  Initially, the court must determine whether there is a conflict between the subject states' laws.  *Jepson v. Gen. Cas. Co. of Wis.*, 513 N.W.2d 467, 469 (Minn. 1994).  With respect to non-compete agreements, Wisconsin, by statute, holds that a covenant not to compete which is unreasonable in any aspect is completely void.  Wis. Stat. § 103.465; *Beilfuss v. Huffy Corp.,* 274 Wis. 2d 500, 508, 685 N.W.2d 373, 377 (Ct. App. 2004).  Minnesota, on the other hand, applies the "blue-pencil" rule: if the covenant is severable, the court can excise the invalid portion and enforce the remainder of the covenant. *Davies & Davies Agency, Inc. v. Davies,* 298 N.W.2d 127, 131 n.1 (Minn. 1980). This case therefore presents an actual conflict of law.

In disputes between parties to a commercial contract in which there is a conflict of law and the contract does not contain a choice of law provision, if applying either state's law would be constitutional,[6] Minnesota courts apply a five factor test to determine the "best law." *See e.g. Hime v. State Farm Fire & Cas. Co.,* 284 N.W.2d 829 (Minn. 1979); *Milkovich v. Saari,* 295 Minn. 155, 203 N.W.2d 408 (1973).  The five factors are:

(1) predictability of the result;

(2) maintenance of interstate and international order;

---

[6] Since an actual conflict exists, this Court must determine whether Minnesota and Wisconsin have significant contacts, such that both state's laws can constitutionally be applied.  *Jepson*, 513 N.W.2d at 469.  Wisconsin clearly has significant contacts – Hanson is a Wisconsin resident working at a company's Wisconsin facilities.  Minnesota, on the other hand, has extremely limited contacts to this dispute (*i.e.,* Hanson's sole customer at Loparex, 3M, is headquartered here).  For purposes of this motion, however, Hanson assumes that such Minnesota contacts are sufficient to pass constitutional muster.

(3) simplification of judicial task;

(4) advancement of the forum's governmental interest; and

(5) application of the better rule of law.

*Jepson*, 513 N.W.2d at 470 (citing *Milkovich*, 295 Minn. at 161, 203 N.W.2d at 412 (1973)).  These factors support application of Wisconsin law to this dispute.

### A.      Predictability of the result.

The predictability of the result is "most relevant when parties have expectations about the applicable law, such as in 'consensual transactions where people should know in advance what law will govern their act.'"  *Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1394 (8th Cir. 1997) (quoting *Milkovich*, 295 Minn. at 161, 203 N.W.2d at 412).   Here, it was certainly predictable at the time of contracting that Hanson's non-compete obligations would be governed by Wisconsin law.  Hanson was a Wisconsin resident, employed at Loparex Inc.'s Hammond, Wisconsin plant.   While Hanson's sole customer, 3M, was headquartered in Minnesota.  Hanson was tasked with building 3M's international business, and his contacts with 3M in Minnesota were very limited.

These facts compel the conclusion that the application of Wisconsin law would be the reasonable expectation of the employer and employee alike.[7]  *Rheineck v. Hutchinson Tech. Inc.*, 171 F. Supp. 2d 915, 927 (D. Minn. 2000) *aff'd*, 261 F.3d 751 (8th Cir. 2001)

---

[7] Loparex knew how to specify the governing law, but did not do so.  In fact, Loparex included such a provision in other non-compete agreements that were executed at the same time as Hanson's (Streater Dec., ¶ 3, and Exhibit B thereto), but such a clause was omitted from Hanson's Employment Agreement.

("the fact that the Plaintiff is a Wisconsin resident who was working for her employer in Wisconsin suggests that the application of Wisconsin employment statutes would have been the more reasonable expectation of the parties.").

     **B.**     **Maintenance of interstate order.**

     The maintenance of interstate order requires that the state whose laws are ultimately applied have a substantial connection with the operative facts and the particular issue. *Standal v. Armstrong Cork Co.*, 356 N.W.2d 380, 381-82 (Minn. Ct. App. 1984). "This factor [also] addresses whether applying Minnesota law would manifest disrespect for [Wisconsin law] or impede interstate movement of people and goods." *See Schumacher v. Schumacher,* 676 N.W.2d at 685, 690 (Minn. Ct. App. 2004) (citing *Jepson v. General Cas. Co. of Wis.*, 513 N.W.2d 467, 471 (Minn. 1994)).

     Here, Wisconsin law should apply because of that state's more significant contacts with the claims. In the *Rheineck* case, Judge Donovan Frank explained that Wisconsin law was applicable where:

> Plaintiff [was] a Wisconsin resident who [was] suing her employer for injuries she allegedly suffered in Wisconsin. Minnesota's contacts [were] limited to the fact that HTI [was] a Minnesota corporation and that the picture of the Plaintiff was apparently found on a disk in a computer that originated from HTI's Minnesota facility. Nevertheless, the injuries of which the Plaintiff complain[ed] all allegedly occurred in Wisconsin, and Wisconsin [had] the more significant contacts with the claims at issue.

*Rheineck*, 171 F. Supp. 2d at 927.

     The Wisconsin connection is even stronger in this case as Hanson's employer is not a Minnesota company. And like *Rheineck*, Minnesota has a very limited connection to this case. In fact, Minnesota's only connection to this case is that 3M, Hanson's

customer at Loparex Inc., was headquartered in Minnesota.  Notably, neither Hanson's Complaint, nor Defendants' Counterclaims, reference any actions that took place in Minnesota.

In contrast, Wisconsin has substantial contacts.  Hanson is a Wisconsin resident who worked at Loparex Inc.'s Wisconsin facility.  Hanson's work for Loparex Inc. was based either out of Loparex Inc.'s Hammond, Wisconsin plant, out of his home in that city, or consisted of global travel.  Wisconsin clearly has the most substantial contacts with the facts and the particular issues of this case and its law should therefore be applied.  *Standal*, 356 N.W.2d at 381-82.

### C.   <u>Simplification of judicial task.</u>

Generally this factor poses no problems because courts are capable of enforcing the law of another forum if called upon to do so.  *Milkovich*, 295 Minn. at 161, 203 N.W.2d at 412.  Wisconsin a straightforward rule of law with respect to the enforceability of employee non-compete agreements – if any part of the covenant is unreasonable or overbroad, the entire covenant is void – and thus provides a clear and simple means for the Court to protect the freedom of worker mobility without unreasonable restraints.

### D.   <u>Advancement of the forum's governmental interest.</u>

The advancement of the forum's governmental interest also weighs in favor of the application of Wisconsin law.  "In considering which law will advance the governmental interest of Minnesota, [a Minnesota] court considers the public policy of *both* forums." *Schumacher,* 676 N.W.2d at 691 (*citing Lommen v. City of Grand Forks,* 522 N.W.2d 148, 152 (Minn. Ct. App. 1994)) (emphasis added).

-14-

In this case, there is no Minnesota governmental interest that outweighs Wisconsin's compelling interest in protecting the mobility and employability of its residents by applying Wis. Stat. § 103.465. As the *Rheineck* court recognized: "Wisconsin has an interest in having its principles of employment law applied when a Wisconsin resident sues [his] employer for injuries []he allegedly incurred in Wisconsin." 171 F. Supp. 2d at 927. *See also Beilfuss*, 685 N.W.2d at 377 ("statutes which make a particular type of contract . . . unenforceable, *e.g.,* laws prohibiting covenants not to compete . . ., are likely to embody an important state public policy.")  The Wisconsin Legislature, like the Minnesota Legislature, obviously expects that the laws enacted in that states will be applied to the people who live and work within its borders.  Wisconsin does not, nor should it, make policy for employees who live and work in Minnesota.  The reverse is also true.

### E.    Application of the better rule of law.

Since the preceding four factors dictate the application of Wisconsin law, the court need not consider the final factor to consider which is the better rule of law.  *Rheineck*, 171 F. Supp. 2d at 927; *Klimstra v. State Farm Auto Ins. Co.*, 891 F. Supp. 1329, 1336 (D. Minn. 1995), *aff'd*, 95 F.3d 686 (8th Cir. 1996); *Meyers v. Gov't Employees Ins. Co.*, 302 Minn. 359, 368, 225 N.W.2d 238, 244 (1974).

In summary, Wisconsin has substantial contacts with the facts and claims in this case, while Minnesota does not.  Since Hanson is a Wisconsin resident, who worked in Wisconsin, and is suing his employer to establish his rights under a contract involving his

employment in Wisconsin, the decision is clear: Wisconsin law prevails. *Rheineck*, 171 F. Supp. 2d at 927.

## III.   HANSON'S NON-COMPETE OBLIGATIONS ARE INVALID UNDER WISCONSIN LAW

Wisconsin public policy favors the mobility of workers. *Mutual Serv. Cas. Ins. Co. v. Brass*, 625 N.W.2d 648, 652 (Wis. Ct. App. 2001) (overruled on other grounds by *Star Direct, Inc. v. Dal Pra*, 767 N.W.2d 898 (Wis. 2009). Thus, any contract that operates to restrict competition is *prima facie* suspect. *Streiff v. Am. Family Mut. Ins. Co.*, 348 N.W.2d 505, 509 (Wis. 1984). This policy is reflected in section 103.465 of the Wisconsin Statutes, which provides:

> A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant . . . imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance as would be a reasonable restraint.

The public policy embodied in this statute is that post-termination restrictive employment agreements are disfavored. *Equity Enterps., Inc. v. Milosch*, 633 N.W.2d 662 (Wis. Ct. App. 2001). *See also Farm Credit Servs. of N. Cent. Wis, ACA v. Wysocki*, 627 N.W.2d 444 (Wis. 2001) (Wis. Stat. § 103.465 "evidences a strong public policy" against the enforcement of unreasonable restraints).

"Blue-penciling"[8] is not permitted in Wisconsin. Under Wis. Stat. § 103.465, if any part of the restrictive covenant is unreasonable, in any respect, the entire covenant is void and unenforceable. *Streiff*, 348 N.W.2d at 509. In enacting this statute, the legislature was concerned that, without such a rule, an employer possessing bargaining power superior to that of its employees would be encouraged to insist upon unreasonable and excessive restrictions, secure in the knowledge that the employee's promise would be upheld in part, if not in full. *Streiff*, 348 N.W.2d at 509.

Wisconsin courts apply a five factor analysis to determine reasonableness of a restrictive covenant: (1) is the restrictive covenant reasonably necessary for the protection of employer; (2) does the restrictive covenant contain a reasonable time limit; (3) does the restrictive covenant provide a reasonable territorial restriction; (4) is the restrictive covenant harsh or oppressive to the employee; and (5) is the restrictive covenant contrary to public policy. *See Lakeside Oil Co. v. Slutsky*, 98 N.W.2d 415 (Wis. 1959); *Chuck Wagon Catering Inc. v. Raduege*, 277 N.W.2d 787 (Wis. 1979). If a restrictive covenant fails to meet any one of these five factors, it is unenforceable. *Lakeside Oil*, 98 N.W.2d at 419 (rule requires all five elements); *Chuck Wagon*, 277 N.W.2d at 792 ("five basic requirements necessary to enforcement of a restrictive covenant"); *Pollack v. Calimag*, 458 N.W.2d 591, 598 (Wis. Ct. App. 1990) ("We conclude that the Pollack-Calimag agreement survives all five inquiries and is therefore enforceable.").

---

[8] Blue penciling refers to the doctrine adopted in some jurisdictions that allows the court, in its discretion, to reform unreasonable provisions in a non-compete to make then reasonable. *See e.g., Bess v. Bothman*, 257 N.W.2d 791, 794-95 (Minn. 1977).

Loparex Inc., as the employer, has the burden of proof to establish the reasonable necessity of the restrictions it seeks to impose. *See Tatge v. Chambers & Owen, Inc.*, 579 N.W.2d 217, 227 (Wis. 1998) ("Wis. Stat. § 103.465 imposes a heavy burden on the employer who seeks to enforce a covenant not to compete." (emphasis added)); *Geocaris v. Surgical Consultants, Ltd.*, 302 N.W.2d 76, 77 (Wis. Ct. App. 1981) (burden of proof on employer); *NBZ v. Pilarski*, 520 N.W.2d 93, 97 (Wis. Ct. App. 1994) (burden of proof on employer).

Here, Loparex Inc.'s restrictive covenant is void on its face for several separate and distinct reasons.

### A.      Loparex Inc.'s "business clause" restrictive covenant impermissibly prohibits Hanson from working in any capacity for a competitor.

Subparagraph (4)(a) of Article III of Hanson's Employment Agreement contains a "business clause" restrictive covenant.  It provides as follows:

> 4.  The Employee hereby undertakes and covenants, while employed by the Company or any of its affiliates for a period of twenty-four (24) months after the cessation of his employment or service with the Company, whether as principal or agent, and whether alone or jointly with, or as a director, partner, shareholder, employee or consultant of any other person he will not, unless separately authorized thereto by prior written and specified consent by the Company, directly or indirectly:

> (a) be employed in a management, *Employee* or administrative capacity for, or perform like services for, operate, finance, or own an equity interest (except for ownership of less than 2% of the equity of a publicly traded company) of a Competitor of the Company any place globally in which the Company does Business;

(emphasis added).

-18-

If enforceable, this provision would prohibit Hanson from working in *any capacity* in *any business* that competes with Loparex Inc. *anywhere* in the world.  Such overly broad restrictions are unenforceable as a matter of law.  For example, in *Mutual Serv. Cas. Ins. Co.,* 625 N.W.2d 648, the defendant was hired as an insurance agent by the plaintiff insurance company.  The employee was the subject of a non-compete agreement that provided, among other things, that:

> Following termination of the Agent's Contract, Agent will not . . . engage in or be licensed as an Agent, solicitor, representative, or broker, or in any way be connected with the property, casualty, health, or life insurance business as a representative or **employee** of the American National Insurance Company, its subsidiaries, affiliates or related companies, within a period of 3 years from the date of the voluntary or involuntary termination of this contract.

625 N.W.2d at 652-53 (emphasis added).  The Wisconsin Court of Appeals struck down the non-compete agreement, finding that it was unreasonable as a matter of law.  *Id*. at 654.  The court noted that the insurance company was attempting to prohibit the employee from holding *any position* at the competitor, including working "even as a janitor" for the competitor.  (*Id*. at 654-655).

Similarly, in *Geocaris v. Surgical Consultants, Ltd*., 302 N.W.2d 76 (Wis. Ct. App. 1981), the court voided a restrictive covenant that restricted Geocaris, a surgeon, from practicing *medicine* within a fifty mile radius of his prior employment. The court concluded:

> . . . Surgical Consultants must prove that its restrictive covenant imposed no greater restraint on Geocaris than was reasonably necessary to protect its right. Surgical Consultants has proven only that it needed to restrain Geocaris from performing surgery. It has offered no proof that Geocaris' practice as a physician, exclusive of surgery, would compete with its

surgical practice. It has also not proven any justifiable need to restrain Geocaris' noncompetitive practice of medicine. The restraint was, therefore, not reasonably necessary.

302 N.W.2d at 389.

What is dispositive under Wis. Stat. § 103.465 is what the agreement provides, not what the employee intends to do.  For example, it did not matter in *Surgical Consultants* that Dr. Geocaris in fact intended to compete as a surgeon:

We reject the trial court's conclusion that the restriction was reasonable because Geocaris was not likely to practice medicine in any capacity other than as a surgeon. Although this fact may render immaterial the excessive aspect of the restriction, it is not material to the issue of whether the restriction was reasonably necessary for Surgical Consultants' protection.

302 N.W.2d at 389.

The language in Loparex Inc.'s agreement is similarly impermissible because it would preclude Hanson from accepting employment not only in sales, the position that he held at Loparex Inc. before he was instructed to provide no further services for the company, but also in any "[e]mployee or administrative capacity" with a competitor.  Just like Brass, Hanson could not even wash the floors for a competitor.  And as established by *Surgical Consultants*, the fact that Hanson is now employed by Mondi Akrosil in a similar position to that held at Loparex Inc. is irrelevant – because the agreement purports to restrict Hanson from taking *any* position at a competitor, regardless of whether that position is similar to the position that the employee previously held, it is overly broad and unenforceable.  *Surgical Consultants*, 302 N.W.2d at 389; *Mutual Serv. Cas. Ins.,* 625 N.W.2d at 655.

In summary, the Employment Agreement purports to restrict Hanson from working in any capacity for a competitor - the type of overly broad restriction condemned in *Mutual Serv. Cas. Ins. Co. v. Brass* - and it would restrict him from performing services that are not the same or similar to what he performed for Loparex Inc. – the type of overly broad restriction condemned in *Geocaris v. Surgical Consultants, Ltd.*  On the basis of this overreaching, Loparex Inc.'s restrictions are "illegal, void and unenforceable" in their entirety. Wis. Stat. § 103.465.

> **B.**     **Loparex Inc.'s "business clause" restrictive covenant is unenforceable because it lacks a geographic restriction.**

Wis. Stat. § 103.465 expressly refers to a requirement for a reasonable territorial restriction in a restrictive covenant ("within a specified territory").  But here, there is no geographic restriction on Loparex Inc.'s business clause non-compete provision.  It prohibits Hanson from accepting employment with a competitor anywhere in the world where Loparex Inc. does business, which exceeds the territorial scope of the customers actually serviced by Hanson.  "In Wisconsin, a covenant is . . . reasonable as to territory if . . . it is limited to the route or customers [the employee] actually services." *Chuck Wagon Catering v. Raduege*, 277 N.W.2d 787, 793 (Wis. 1979).  *See also Mutual Serv. Cas. Ins. Co.,* 625 N.W.2d 648 (invalidating a non-compete lacking a geographic restriction).

C.    **Loparex Inc.'s "customer clause" restrictive covenant impermissibly prohibits Hanson from soliciting business from any customer with whom he had "contact" at Loparex Inc. regardless of whether he ever had substantive dealings with the customer or had access to confidential information on the customer.**

Subparagraph 4(b) of Article III of Hanson's Employment Agreement contains a

"customer clause" restrictive covenant.  It provides as follows:

> 4.  The Employee hereby undertakes and covenants, while employed by the Company or any of its affiliates for a period of twenty-four (24) months after the cessation of his employment or service with the Company, whether as principal or agent, and whether alone or jointly with, or as a director, partner, shareholder, employee or consultant of any other person, he will not, unless separately authorized thereto by prior written and specified consent by the Company, directly or indirectly:
>
> * * *
>
> (b)    solicit business from or perform services for, or for the benefit of, any customer of Company or any of its affiliates *with which Employee had contact*, participated in the contact, or about which Employee had knowledge of Confidential Information by reason of Employee's employment with Company within the thirty-six month period prior to termination of employment, or solicit business from or perform services for, or for the benefit of, any customer which was pursued by Company or any of its affiliates *and with which Employee had contact*, participated in the contact, or about which Employee had knowledge of Confidential Information by reason of Employee's employment with Company within the thirty-six month period prior to termination of employment; provided that such business or services solicited or offered are of the same general character as the Business of Company or its affiliates at the time of such solicitation or offer;

(Emphasis added).

If enforceable, this provision would prohibit Hanson from not only soliciting

business from any Loparex Inc. customer with whom he had had extensive dealings while

at Loparex Inc., but also from soliciting business from any customer "with which [he]

had contact" within the three year period prior to the termination of his or her

-22-

employment. Because "contact" is not defined, the term could mean anything from simply being introduced to a customer at a social event, to having extensive dealings and a long-term relationship with a customer. While the latter may give rise to a protectable business interest, the former, unless the employee had access to important customer information about the customer, would not. *See, e.g., Star Direct, Inc. v. Dal Pra*, 767 N.W.2d 898, 906-909 (Wis. 2009) (enforcing a customer clause non-compete provision that was limited to customers for whom the employee had performed services or about which the employee had obtained special knowledge); *Rollins Burdick Hunter of Wis., Inc. v. Hamilton,* 304 N.W.2d 752, 756 (Wis. 1981). Since the above non-compete provision is not expressly limited to customers with whom the employee had substantive dealings or about which the employee had knowledge of confidential information, the provision is overly broad and thus unenforceable under Wis. Stat. § 103.465.

### D. <u>Loparex Inc.'s restrictive covenants are unenforceable because they are not necessary for the protection of Loparex Inc.</u>

Restrictive covenants are enforceable under Wisconsin law only where "the employee . . . present[s] a substantial risk either to the employer's relationships with his customers or with respect to confidential business information." *Fields Found., Ltd. v. Christensen*, 309 N.W.2d 125, 129 (Wis. Ct. App. 1981) (quoting Harlan M. Blake, Employee Agreements Not to Compete, 73 Harv. L. Rev. 625, 653 (1960)). Here, Loparex Inc.'s non-compete is unreasonable and therefore unenforceable because it is not necessary for the protection of Loparex Inc.'s customer relationships or its confidential business information.

On August 9, 2007, after Hanson had been employed by Loparex Inc. for a little more than one year, Loparex Inc. sent him home and directed that he perform no services for Loparex Inc. unless specifically directed to do so by Loparex Inc.'s President. Between August 9, 2007 and June 30, 2009, the termination date of the Employment Agreement, however, Loparex Inc. did not request that Hanson perform any services. Indeed, from August 9, 2007 to June 30, 2009, Hanson provided no services for Loparex Inc., had no substantive contacts with customers, and was not provided with any Loparex Inc. business information, let alone confidential business information.  Because Hanson has been "sidelined" for the last two years, Loparex Inc. has no substantial business interest to now protect.  *See Chuck Wagon Catering, Inc.,* 277 N.W.2d at 792 (requiring that agreement must be necessary for the employer's protection).

*Equity Enterprises, Inc. v. Milosch*, 633 N.W.2d 662 (Ct. App. 2001) is instructive.  There, the court explained why a customer list restriction there at issue was unreasonable and violated Wis. Stat. § 103.465:

> [T]he "customer list" restriction in this case is far from being narrowly tailored. In *Wysocki,* the restriction prohibited Wysocki from contacting any client he had serviced in the year prior to his date of separation. *Wysocki*, 243 Wis.2d 305, 627 N.W.2d 444, 2001 WI 51 at ¶ 14. In another "customer list" restriction case, *Hunter of Wisconsin v. Hamilton*, 101 Wis.2d 460, 304 N.W.2d 752 (1981), the supreme court approved a "customer list" restriction limited to customers serviced during a period which was the lesser of two years before the employee's termination or the employee's period of employment. *Id.* at 462-63, 304 N.W.2d 752. In contrast, the "customer list" restriction in this case prohibits Milosch from doing business with any customer of Equable whom Milosch serviced at any time during his employment with Equable. This restriction is unreasonable because it would prohibit Milosch from doing business with a customer he serviced during his first weeks of employment in 1982 who subsequently transferred his or her business to a competitor of Equable.

Such an overbroad restriction is invalid because preventing Milosch from contacting former Equable customers is not reasonably necessary to protect Equable's legitimate business interests.

633 N.W.2d at 670 n.4.

The court's reasoning in *Equity Enterprises* applies here. Preventing Hanson from working for a Loparex Inc. competitor, and from soliciting business from former Loparex Inc. customers, despite the complete lack of *any* customer contact, or *any* access to confidential customer information, for more than *two years,* is not reasonably necessary to protect Loparex Inc.'s legitimate business interests.

## IV.   ALTERNATIVELY, IF LOPAREX INC.'S NON-COMPETE OBLIGATIONS ARE VALID, THEY HAVE TERMINATED.

### A.   Hanson has not provided services to Loparex Inc. for two years and has thus fulfilled the non-compete obligation.

Even assuming that the Employment Agreement is not void on its face, it is no longer enforceable. In that regard, under Paragraph 4 of Article III of the Employment Agreement, Hanson agreed that "for a period of twenty-four (24) months after the cessation of his employment or ***service*** with [Defendant] . . ." he would not engage in certain competitive activities with Loparex Inc., and would not solicit business from Loparex Inc.'s customers. On August 9, 2007, Loparex Inc. directed that Hanson cease providing any services to or on behalf of Loparex Inc. unless further instructed to do so by Loparex Inc.'s President. Between August 9, 2007 and June 30, 2009, the termination date of the Employment Agreement, however, Hanson was never requested to provide any further services to Loparex Inc., and he had no contacts with Loparex Inc.'s customers. Thus, as of August 9, 2009, Hanson had fully complied with the obligations

-25-

in the Employment Agreement. Hanson is thus entitled to a declaratory judgment establishing that he has fulfilled any non-compete obligation under the Employment Agreement.

### B. Allowing Loparex Inc. to enforce the non-compete for two years from June 2009 would allow it to end run around the law of non-compete.

Hanson anticipates that Loparex Inc. will argue that the two year non-compete period begins to run only upon termination of Hanson's employment because Loparex Inc. continued paying his salary until then, and that Hanson should therefore be enjoined from competing until June 30, 2011, the two year anniversary of his termination. If such an argument is accepted, however, Loparex Inc. will have succeeded in restraining Hanson from competing with Loparex Inc. for a period of four years, a time period unquestionably overbroad under Wisconsin law.[9]

Loparex Inc. cannot be allowed to effect an end-run around Wisconsin's non-compete law simply by keeping Hanson on the payroll. While consideration is a threshold requirement of a non-compete (*see NBZ, Inc. v. Pilarski*, 520 N.W.2d 93, 97 (Wis. Ct. App. 1994)), there is nothing in Wisconsin law that suggests that continuing an employee's compensation will make an otherwise unenforceable non-compete enforceable. To hold otherwise would gut Wisconsin's non-compete law and render it meaningless. Employers could avoid the statutory bar on overbroad non-compete

---

[9] While Wisconsin courts have upheld employee non-competes of two year durations, (*see, e.g., Lakeside Oil*, 98 N.W.2d 415), Hanson has not found any cases that have upheld non-competes for longer periods.

restrictions by structuring payments to an employee to continue for excessive periods into the future, while technically keeping individuals whose competition they fear on as "employees" but "benching" them, as they did with Hanson. Employers would have the benefit of not only keeping the employee out of direct competition for years at a time, but also of keeping them out of an industry in which keeping current and maintaining contacts is essential, rendering their skills stale by the time they are allowed back into their profession.

## V.   <u>CONCLUSION</u>

By sending Hanson home two years ago, Loparex Inc. has already obtained the benefits of its two year non-compete with him. Loparex Inc.'s insistence that Hanson must now stay out of his profession for another two years is simply an illegal attempt to restrain competition. Furthermore, the restrictions as drafted in the Employment Agreement are void on their face because they purport to preclude Hanson from accepting any position with a competitor, whether similar to his position with Loparex Inc. or not, they purport to restrict Hanson from taking employment with a competitor anywhere in the world that Loparex Inc. does business, regardless of whether Hanson serviced customers in that geographic area, and they purport to restrict Hanson from soliciting customers with whom he had "contact", regardless of whether he had had substantive dealings with or had received confidential information about, the customer. Finally, because Hanson has already been out of the game for two years, and has not received any protectable information in the meantime, Loparex Inc. has no legitimate interest to protect.

This Court should grant Hanson's Motion for Partial Summary Judgment, declaring that the non-compete obligations are void and unenforceable, and alternatively, that the non-compete obligations terminated on August 9, 2009.

Dated:  August 21, 2009

**BRIGGS AND MORGAN, P.A.**

By:  s/Michael H. Streater
     Michael H. Streater (#106331)
     Christianne Riopel (#348247)
2200 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2157
(612) 977-8400

**Attorneys for Plaintiff**