UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jon Hanson,<br>    Plaintiff,<br>v.<br><br>Loparex Inc., a Delaware corporation, and Loparex LLC, a Delaware limited liability company,<br><br>    Defendants,<br>    Counterclaimants and<br>    Third Party Plaintiffs,<br>v.<br><br>Mondi Packaging Akrosil, LLC, a corporation, Mondi Packaging Minneapolis Inc., a corporation,<br><br>    Third Party Defendants. | Court File No. 09-CV-1070 (MJD/SRN)<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## I. INTRODUCTION

  Hanson moves for summary judgment on three independent bases: 1) the non-compete provisions in the employment agreement that Loparex seeks to enforce against him are impermissibly overbroad; 2) enforcement of the non-compete provisions are not necessary for the protection of Loparex's legitimate business interests; and 3) Hanson's non-compete obligations, by their terms, ended on August 9, 2009.

  Loparex cannot dispute that the restrictive covenants in Hanson's employment agreement are overbroad, or that they are necessary to protect any legitimate business interests. And incredibly, Loparex is silent in the face of Hanson's third argument.

2435804v1

## II.     ARGUMENT

### A.     Wisconsin Law Applies

Loparex opens its brief with, and hinges its entire attempt to avoid summary judgment on, the argument that Minnesota law applies to this dispute. This argument proceeds from the (incredible) contention that Wisconsin and Minnesota non-compete laws are the same.[1] As demonstrated below, not only are Wisconsin and Minnesota's non-compete laws markedly different, the remaining choice of law factors also compel the conclusion that Wisconsin's law is dispositive.

The parties do not dispute the constitutionality of applying either Minnesota or Wisconsin law to their dispute. Nor does either side contend that the "better rule of law factor" in Minnesota's choice of law test needs to be analyzed. Thus, the parties' dispute over which law should apply depends on whether this Court concludes that there is a conflict between the two states' laws, and if so, whether the four factors other than the "better rule of law" factor favor one state's law over the other. All signs point towards application of Wisconsin's law.

### 1. Minnesota and Wisconsin Do Not Share the Same Non-Compete Law.

Minnesota allows "blue-penciling" of non-compete provisions to reform unreasonable or overly broad provisions. *Bess v. Bothman*, 257 N.W. 2d 791, 794-95 (Minn. 1977). Wisconsin does not. Under Wisconsin law, if any part of a restrictive covenant is unreasonable, in any respect, the entire covenant is void and unenforceable.

---

[1] If that were the case, it is curious why Loparex would fight so heartily to avoid Wisconsin law.

*See* Wis. Stat. § 103.465. ("Any covenant . . . imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance as would be a reasonable restraint.") *See also Streiff v. Am. Family Mut. Ins. Co.*, 348 N.W. 2d 505, 512 (Wis. 1984) ("Under sec. 103.465 if an indivisible covenant imposes an unreasonable restraint, the covenant is illegal, void, and unenforceable even as to so much of the covenant as would be a reasonable restraint").

Loparex cites to a recent decision of the Wisconsin Supreme Court, *Star Direct, Inc. v. Dal Pra,* 767 N.W.2d 898 (Wis. 2009), to support the bold claim that Wisconsin has abandoned its prohibition on "blue penciling" restrictive covenants. Def.'s Mem. at 14-15. *Star Direct,* however, did no such thing. In *Star Direct*, the Court considered the enforceability of a non-compete agreement that contained three separate clauses: (i) a "business clause" that prohibited the employee from engaging in a competitive business; (ii) a "customer clause" that prohibited the employee from interfering with or enticing customers with whom he had performed services; and (iii) a "confidentiality clause" that barred the employee from using or disclosing certain claimed confidential information. *Id.* at 901.

In considering the enforceability of the three clauses, the court focused on whether the three covenants were "divisible." The court stated:

> The foundational inquiry for determining whether a covenant is divisible is whether, if the unreasonable portion is stricken, the other provision or provisions may be understood and independently enforced. . . Restrictive covenants are divisible when the contract contains different covenants supporting different interests that can be independently read and enforced.

*Id.* at 916.

The court concluded that the prescriptions of Wis. Stat. § 103.465 apply to covenants, not to the whole employment contract. *Id*. So, an impermissibly broad confidentiality provision would not, for example, necessarily preclude the enforcement of a reasonable and necessary restriction on customer solicitation in the same agreement, provided the covenants were divisible.

Applying the above analysis, the *Star Direct* court determined that the three clauses were divisible covenants under Wis. Stat. § 103.465. *Id*. at 916-17. The court concluded that the customer and confidentiality clauses were enforceable because they were reasonably necessary for the protection of the employer, but that the "business clause" was overly broad, and thus unenforceable in its entirety. *Id*. at 917.

Hanson's motion seeks summary judgment on the enforceability of the "business clause" and the "customer clause" covenants in his Employment Agreement, each of which is overly broad in their own right. (*See* Hanson's Mem. at 18-21, 22-23). Even in light of *Star Direct*, however, Minnesota and Wisconsin's non-compete laws could reach drastically different results with respect to Hanson's non-compete obligations. Minnesota could determine that the business clause and customer clause should be enforced on a narrower scope than they appear to reach on their face, while Wisconsin could find one or both to be impermissibly overbroad and thus entirely unenforceable. *See Davies & Davies Agency, Inc. v. Davies*, 298 N.W.2d 127, 131 n.1 (Minn. 1980); Wis. Stat. § 103.465; *Beilfuss v. Huffy Corp.*, 685 N.W.2d 373, 377 (Wis. Ct. App. 2004). Contrary to Loparex's conclusion, there is an actual conflict of law, and the choice of law analysis must proceed.

## 2. The Five Factor Test Favors Application of Minnesota Law.

Loparex argues that predictability of the result and the governmental interest factors favor application of Minnesota law, and that the remaining factors favor neither state. Each of these conclusions is incorrect.

### a. Wisconsin Law Favors Predictability.

Loparex argues that predictability of the result will be served by "preserv[ing] the parties' justified contractual expectations" if Minnesota law is applied. Def.'s Mem. at 17. To support this assertion, Loparex first cites to the venue clause in Hanson's Employment Agreement.[2] *Id.* That provision, however, simply selects Minnesota state and federal courts as the proper *location* for resolution of disputes under the agreement – it has nothing to do with which state's law applies to the dispute.

Citing to Hanson's deposition testimony, Loparex then argues that the parties' "justified contractual expectations" dictate Minnesota as the governing law. Def.'s Mem. at 17-18. This argument is specious. First, because the contract is not ambiguous as to the applicable law, the court cannot consider the parties' "contractual expectations;" the plain meaning of the agreement controls. *Carl Bolander & Sons, Inc. v, United Stockyards Corp.*, 298 Minn. 428, 433, 215 N.W. 2d 473, 476 (1974). Since the

---

[2] The venue provision provides, in part: "Any action at law or in equity under this Agreement shall be brought in the courts of Hennepin County, and in no other court (whether or not jurisdiction can be established in another court) or if it has or can acquire jurisdiction in the United States District Court for the District of Minnesota in which Hennepin County is situated. . . . *See* Employment Agreement, Article X.

agreement does not contain a choice of law provision,[3] the presence of a Minnesota venue clause does not imply that application of Minnesota's law was more predictable.

Second, the deposition testimony cited by Loparex does not support Loparex's claim that the parties agreed that Minnesota law would govern the dispute. In the testimony cited by Loparex, Hanson, while looking at his employment agreement with Mondi Akrosil, testifies that his agreement with Mondi was expressly governed by the procedural laws of Ohio, but that his agreement with Loparex was *venued* in Minnesota – "I wasn't in a position like I was with Loparex to negotiate a difference in *venue*". Def.'s Mem. at 18 (emphasis added). Hanson's testimony has nothing to do with choice of law.

Tellingly, Loparex has not submitted any evidence as to its intentions with respect to choice of law on Hanson's Employment Agreement. Accordingly, even if the contract were ambiguous enough to allow the court to look into the parties' intent, there is no evidence before the Court that suggests that the parties intended, let alone agreed, that disputes under the agreement would be determined under Minnesota law.

Loparex's preoccupation with the venue clause simply cannot outweigh the much more likely expectation of a Wisconsin resident, employed at Loparex's Wisconsin plant, that his Employment Agreement would be subject to Wisconsin law. *See* Hanson's Mem. at 12 (citing *Rheineck v. Hutchinson Tech., Inc.*, 171 F.Supp. 2d 915, 927 (D.Minn. 2000) *aff'd*, 261 F.3d 751 (8th Cir. 2001)).

---

[3] The parties certainly could have included a choice of law provision in the Employment Agreement. Indeed, Loparex included such a provision in other non-compete agreements that were executed at the same time as Hanson's (*see* Streater Dec., ¶ 3, and Exhibit B thereto), but such a clause was omitted from Hanson's Employment Agreement.

        b.    <u>Loparex's Application of the Interstate Order Factor Similarly Founders.</u>

In its discussion of the "interstate order" factor, Loparex relies on the incorrect conclusion that Wisconsin law and Minnesota law on non-competes are "extremely similar – if not the same." Def.'s Mem. at 18. As discussed above, this is inaccurate. And, as discussed in Hanson's opening brief, interstate order will be served by applying the law of the state with a substantial connection to the operative facts and the particular issues. Hanson's Mem. at 13 (citing *Standal v. Armstrong Cork Co.*, 356 N.W.2d 380, 381-82 (Minn. Ct. App. 1984)). Because Loparex does not dispute, and thus apparently concedes, that Wisconsin has more significant contacts with the claims, Wisconsin law should apply. *See Rheineck*, 171 F. Supp.2d at 927; *Schumacher v. Schumacher*, 676 N.W.2d 685, 690 (Minn. Ct. App. 2004) (citation omitted) (the factor should be applied to avoid manifesting disrespect for another state's law or impeding interstate movement of people and goods).

        c.    <u>Applying Wisconsin Law Will Simplify the Judicial Task</u>

The parties agree that courts are capable of enforcing law from other jurisdictions. Def.'s Mem. at 14 (citing *Milkovich v. Saari*, 295 Minn. 155, 161, 203 N.W.2d 408, 412 (1973)). Loparex claims that favoring "neither state's law" will simplify the judicial task because it again claims that the laws of Minnesota and Wisconsin are the same. Because this conclusion is incorrect, Wisconsin's simpler rule, which either enforces a restrictive covenant or invalidates it in its entirety, favors application of its laws. *See* Hanson's Mem. at 14.

      d.  Governmental Interest Favors Wisconsin

In applying the governmental interest factor, Loparex focuses solely on Minnesota's interests, ignoring Minnesota's recognition that the "public policy of both forums" must be considered. *Schumacher*, 676 N.W.2d at 691 (citation omitted). Thus, Loparex incorrectly fails to take into account Wisconsin's substantial interest in protecting the mobility and employment of its workers. *See County Materials Corp. v. Allan Block Corp.*, 431 F.Supp.2d 937, 950 (W.D. Wis. 2006) ("statutes which make a particular contract provision unenforceable 'e.g., laws prohibiting covenants not to compete' are likely to embody an important state public policy.") (citations omitted). And, it ignores the expectations of both Wisconsin employees, and the Wisconsin legislature, that the laws enacted in Wisconsin will be applied to Wisconsin workers. *See* Hanson's Mem. at 15.

Loparex's citation to Minnesota's policy interests in ensuring that "parties get the benefit of the contracts they enter into" and "having its contract laws enforced" (Def.'s Mem. at 20) also misses the mark as it assumes that Minnesota has some compelling interest in this contract involving a Wisconsin resident working at a Wisconsin facility.

Because Wisconsin has substantial contacts with the facts and claims in this case, because Hanson, a Wisconsin resident working in Wisconsin, would expect to be subject to Wisconsin law, and because application of Wisconsin's straightforward rule of law will resolve the parties' dispute in the simplest manner, Wisconsin law should prevail.

### III.   HANSON'S NON-COMPETE OBLIGATIONS HAVE BEEN FULFILLED

Hanson's opening brief explains that Hanson's non-compete obligations ended on August 9, 2009. *See* Hanson's Mem. at 25-27. In that regard, Hanson agreed that "for a period of twenty-four (24) months after the cessation of his employment or <u>service</u> with [Loparex] . . ." he would not engage in certain competitive activities with Loparex and would not solicit business from its customers. *Id.* at 25 (quoting Employment Agreement at Article III, ¶ 4) (emphasis added). On August 9, 2007, Hanson was relieved of all duties by Loparex, and directed not to perform any services to Loparex unless directed to do so by Loparex's President. (Hanson Dec., ¶¶ 13-14). From August 9, 2007 to August 9, 2009, Hanson was not directed to and did not perform any services. (*Id.*, ¶13). Accordingly, because Hanson has not performed any "services" to Loparex since August 9, 2007, his non-compete obligations have ended.

Loparex admits that "Mr. Taylor did not assign any projects to Hanson" during the ensuing two-year period. *Id.* (citing Taylor Aff., ¶ 20, Hanson Dep. 114:12-15; 153:15-19). Accordingly, the undisputed evidence is that Hanson provided no "services" to Loparex after August 9, 2007. The non-compete obligations in his Employment Agreement, by their terms, thus expired on August 9, 2009. Summary judgment to that effect should be entered.

**IV.   HANSON'S NON-COMPETE OBLIGATIONS ARE VOID AND UNENFORCEABLE**

   **A.   Hanson's Employment Agreement Was Not Ancillary to the Sale of Douglas Hanson.**

Loparex contends that issues of fact exist regarding the enforceability of Hanson's non-compete obligations, precluding summary judgment, but it fails to identify any facts in dispute. Def.'s Mem. at 21. Rather, its entire argument is legal – Loparex contends that the non-compete obligations should be enforced against Hanson because the Employment Agreement was "incidental to the sale of a business." *Id.* Loparex's argument is without any legal or factual basis.

Under both Minnesota and Wisconsin law, covenants not to complete given in connection with the sale of a business are given less scrutiny than employee non-competes. *See, B & Y Metal Painting, Inc. v. Ball,* 279 N.W.2d 813, 815 (Minn. 1979); *Reiman Assocs., Inc. v. R/A Advertising, Inc.* 306 N.W.2d 292, 295 (Wis. Ct. App. 1981).[4] Here, however, Loparex is not seeking to enforce a non-compete agreement against the *seller* of a business. The Stock Purchase Agreement is between Chris Hanson, Douglas-Hanson and Loparex. *See* Ex. A to Taylor Aff. The Agreement contains a non-compete for Chris Hanson, and makes clear that the non-compete is being given in connection with the sale of Douglas-Hanson. For example, Article IX, ¶ 9.7(a) provides:

---

[4] The principal "Minnesota" case cited by Loparex is *Arthur J. Gallagher & Co. v. Youngdahl,* 412 F. Supp. 2d. 1013 (D. Minn. 2006). (Def.'s Mem. at 21 and 24. *Gallagher*, involved the application of Illinois, not Minnesota law. *Id*. at 1016.

> (a)     Restrictions. [Chris Hanson] acknowledges that [Loparex] has paid valuable consideration for the Acquired Stock, including the assets of [Douglas-Hanson], particularly customer and supplier lists, distribution records, know how, goodwill and other proprietary business information and trade secrets of [Douglas-Hanson].  The use by [Chris Hanson] of these relationships and such confidential information in a business or activity which competes with [Loparex] or a Related Affiliate would provide the competing business with an unfair advantage over [Loparex] or such Related Affiliate. . . .   [Chris Hanson] recognizes and agrees that the enforcement of this Section 9.7 is necessary to ensure the preservation, protection and continuity of the value of the Acquired Stock . . . .

While the Stock Purchase Agreement clearly restrains Chris Hanson, the Seller of Douglas-Hanson, from competing following the sale, there is no similar provision with respect to Jon Hanson.  Indeed, Jon Hanson is *not* a party to the Stock Purchase Agreement.  His non-compete obligations arise by reason of his employment by Loparex following the sale, pursuant to his Employment Agreement.  Loparex, however, has not provided any authority for the proposition that a non-compete agreement given by an employee of a company being sold would be subject to the lower judicial scrutiny that is given to such covenants when made by the seller in connection with the sale of a business.

While Hanson has found no cases directly on point, the case law suggests that courts will closely scrutinize whether the standard applicable to a covenant not to compete given in connection with the sale of a business should apply to a particular individual.  For example, in *Otto v. Weber*, 379 N.W.2d 692 (Minn. Ct. App. 1986), the assets of a closely-held corporation were sold to another closely-held corporation.  *Id.* at 693.  The sale documents included a provision signed by the principal shareholder, officer and employee of the selling corporation, in his capacity as an officer of the

company, that the selling corporation would not compete with the buying corporation in a certain territory for a period of five years. *Id.* The trial court held that the shareholder of the selling corporation was personally bound by the non-compete because he was "personally indistinguishable" from the corporate entity. *Id.* at 694. The court of appeals reversed, however, finding that under the unambiguous terms of the sale documents, there was no basis included to bind the individual shareholder to the non-compete. *Id.* at 694-95. *See also S. Hammond Story Agency, Inc. v. Baer*, 202 Ga. App. 281, 414 S.E.2d 287 (1991) (where the court held that a non-compete given by a minority shareholder and former employee in connection with the sale of business should be treated as a covenant ancillary to an employment contract, as opposed to ancillary to the sale of a business, because the individual's bargaining capacity was no greater than that of a "mere employee.")

Here, had Loparex viewed Jon Hanson's non-compete as being ancillary to its purchase of Douglas-Hanson, the Stock Purchase Agreement would have included acknowledgements by Jon Hanson similar to those given by Chris Hanson. The fact is, however, that Jon Hanson was not a party to the Stock Purchase Agreement, nor did he have any greater bargaining power than any other Douglas-Hanson employee. There is thus simply no basis on which to conclude that Hanson's non-compete was "incidental to the sale of a business."

Furthermore, a plain reading of the Stock Purchase Agreement itself demonstrates that Hanson's Employment Agreement was not incidental to the sale of Douglas-Hanson such that it should be subjected to less stringent scrutiny under either Wisconsin or

Minnesota law. Loparex contends that such covenants are found when "the covenant was part of the consideration [in a business deal], and without it, [the enforcing corporation] doubtlessly could have and would have commanded more monetary consideration." Def.'s Mem. at 22 (quoting *Gander Mountain Co. v. Cabela's, Inc.,* 2005 WL 1995499, at *4 (D.Minn. Aug. 18, 2005) (citation omitted)). But here, the Stock Purchase Agreement unambiguously establishes that Jon Hanson's Employment Agreement was not consideration provided to Loparex. Rather, the requirement that Loparex enter into an Employment Agreement with Hanson appears in the list of deliverables that "[Loparex] shall deliver to the Seller [Chris Hanson and Douglas-Hanson]." *See* Stock Purchase Agreement, Section 1.3 (ii)(D). It was Chris Hanson and Douglas-Hanson that contractually required "evidence of the execution by Loparex, Inc. . . . of a three (3) year employment agreement with Jon Hanson . . . ." *Id.*

   **B.** **The Business Clause and Customer Clause Are Unenforceable.**

Because Hanson's Employment Agreement was not incidental to the sale of Douglas-Hanson, Wis. Stat. § 103.465 applies, and both the "business clause" and "customer clause" are void as impermissibly overbroad and unnecessary to protect the legitimate interests of Loparex. *See* Hanson Mem. at 18-25. Loparex has provided no factual or legal support for a contrary conclusion. In fact, Loparex has failed to address the enforceability of these claims under Wis. Stat. § 103.465, apparently conceding that if the Employment Agreement was not incidental to the sale of Douglas-Hanson, Hanson's motion for summary judgment should succeed.

Even if the Court were to conclude that the Employment Agreement was incidental to the sale of the company, however, Wisconsin courts would not enforce the clauses at issue. Loparex points out:

> In determining whether a covenant not to compete obtained ancillary to the sale of a business is reasonable under Wisconsin law, the court examines whether the covenant is: (1) reasonably necessary for the protection of the beneficiary; (2) reasonable as between the parties, and particularly as to the party restrained, considering time, space, purpose, and scope; and (3) not specially injurious to the public.

Def.'s Mem. at 26 (citing *Reiman*, 306 N.W.2d at 295). Thus, even if Hanson's Employment Agreement was ancillary or incidental to the sale of Douglas-Hanson, the business clause and the customer clause are not excused from the requirements, discussed in Hanson's original memorandum, that they be reasonable in scope, purpose, and geographic application.[5]

With respect to the "business clause" restrictive covenant, because it impermissibly bars Hanson from working in *any* capacity for a competitor, and because it lacks *any* geographic restriction, it is invalid. *See* Hanson's Mem. at 18-21 (citing *Geocaris v. Surgical Consultants, Ltd.*, 302 N.W.2d 76 (Wis. Ct. App. 1981); *Chuck Wagon Catering v. Raduege*, 277 N.W.2d 787, 793 (Wis. 1979)). Similarly, Loparex's "customer clause" restrictive covenant is unenforceable because it impermissibly restricts him from soliciting business from *any* customer with whom he had "contact," without

---

[5] The same result would follow if Minnesota law was applied. *See Bess v. Bothman*, 257 N.W.2d 791, 794 (Minn. 1977) (despite the somewhat relaxed test of reasonableness applied in the sale of business context, Minnesota courts will still scrutinize such a covenant not to compete to make sure it does not provide "more protection to the purchaser than is necessary to secure the goodwill he purchased.").

regard to the nature of that contact, and is thus unreasonably broad in purpose and scope. *See* Hanson's Mem. at 22-23 (citing *Star Direct*, 767 N.W.2d at 906-09; *Rollins Burdick Hunter of Wis., Inc. v. Hamilton*, 304 N.W.2d 752, 756 (Wis. 1981)). And, both the "customer clause" and the "business clause" are unenforceable because they are not necessary for the protection of Loparex. *Reiman*, 306 N.W.2d at 295-96 (covenant not to compete obtained ancillary to the sale of business is reasonable if it is reasonably necessary for the protection of the beneficiary); Hanson's Mem. at 23-24 (citing *Fields Found., Ltd. v. Christensen*, 309 N.W.2d 125, 129 (Wis. Ct. App. 1981) (citation omitted); *Chuck Wagon Catering, Inc.*, 277 N.W.2d at 792; *Equity Enterprises, Inc. v. Milosch*, 633 N.W.2d 662 (Wis. Ct. App. 2001)).

Loparex's argues that Hanson's noncompete is necessary for the protection of Loparex because of the relationships and skills Hanson obtained as a "long time sales person and President of the Douglas-Hanson business" and the fact that "Hanson was given international sales responsibilities for 3M under his Employment Agreement with Loparex." Def.'s Mem. at 26-27. Loparex concludes that it would lose the value of its purchase of Douglas-Hanson "if Hanson did not agree to the competition restrictions preventing him from entering the industry he knew intimately and exploiting the long term and successful client relationships he had helped develop." *Id.* at 27. It accordingly contends that "[i]t was reasonable and necessary for Loparex to request that Hanson refrain from soliciting clients of the company it purchased and entering into competition against Loparex for a period of two years following his employment separation." *Id.*

Putting aside the fact that the Stock Purchase Agreement unambiguously requires Loparex to tender an employment agreement to Chris Hanson and Douglas-Hanson, not the other way around, Loparex's argument fails because it does not explain why its interests must be protected for an additional two years beyond the date that Hanson ceased providing services to the company. Pursuant to his Employment Agreement, the non-compete clock started ticking as soon as Hanson's "services" to Loparex terminated on August 9, 2007. *See* Hanson's Mem. at 25-27; Section III, *supra*. Loparex has not identified any new confidential information that Hanson obtained or any customer contacts that Hanson had after that date that would require the non-compete term to be extended.

And, the knowledge and relationships that Hanson brought with him from Douglas-Hanson cannot form the basis for a non-compete obligation greater than two years. Pursuant to the terms of the Employment Agreement, had Hanson voluntarily left employment with Loparex the day after he started, the non-compete would only have run for two years from that date. (*See* Employment Agreement, at Article III, ¶4 ("[Hanson] hereby undertakes and covenants . . . for a period of twenty-four (24) months after the cessation of his employment . . ." that he will not compete.) That he was on the payroll for Loparex during the two-year term of the non-compete restrictions (during which he received no new confidential information from Loparex nor had access to its customers) does not add additional business interests that need protection.

Loparex's final argument essentially turns Hanson into the sole asset of Douglas-Hanson. Def.'s Mem. at 27. Loparex contends that "no one within Douglas-Hanson had

the client relationships and knowledge of the business which Hanson did" and that "[p]rotecting its $72 million investment from Hanson's competition for a period of two years is a modest temporal restriction given Hanson's prior role with the company." *Id*. There are several obvious problems with this argument.

First, in its memorandum Loparex argues that Hanson had no particular technical skills or knowledge. Def.'s Mem. at 9; Taylor Aff., ¶19 ("while [Hanson] had developed a reputation as a good salesperson, it was not due to his technical skills and knowledge.") Loparex's earlier claim that Hanson lacks skills cannot be reconciled with its new claim that Hanson was indispensable to Loparex.

Second, if Hanson was so valuable, Loparex would not have sidelined him for two years beginning in August 2007.

Finally, Loparex's argument fails because its current quest seeks to insulate its "$72 million investment from Hanson's competition" for an additional two years <u>on top of</u> the protection it has already received from August 9, 2007 until August 9, 2009. While two years may have been a reasonable restriction, Loparex has already received that bargained-for benefit.

**V.   <u>UNCLEAN HANDS CANNOT RESURRECT THE EXPIRED AND UNENFORCEABLE  NON-COMPETE</u>**

As a final attempt to avoid summary judgment, Loparex argues that "Hanson's 'unclean hands' with respect to his employment with Loparex bars the relief he seeks." Def.'s Mem. at 28. According to Loparex, it placed Hanson on "'on call' status" and limited his responsibilities and authority because of misconduct by Hanson. *Id.* at 29. It

asserts that Hanson's supposed misconduct cannot be "rewarded by excusing him from his contractual non-compete obligations." *Id.* As discussed above, however, the non-compete obligations Loparex seeks to enforce against Hanson are void as a matter of law and, even if they had been valid, have expired. Because the restrictive covenants are thus not enforceable beyond August 9, 2009, Hanson does not need to be "excused" from them. Unclean hands cannot resurrect the expired and unenforceable non-compete restrictions.

## VI.  CONCLUSION

Hanson respectfully requests that the Court grant his motion for partial summary judgment.

Dated:  November 30, 2009                **BRIGGS AND MORGAN, P.A.**

By: __s/ Michael H. Streater__
    Michael H. Streater (#106331)
    Christianne Riopel (#348247)
2200 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2157
(612) 977-8400

**Attorneys for Plaintiff**