UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jon Hanson,                                                                                 Civil No. 09-1070 (SRN/FLN)

    Plaintiff and Counter-Defendant,

    v.                                                                                              **MEMORANDUM OPINION**
                                                                                                    **AND ORDER**

Loparex, Inc., and Loparex, LLC,

    Defendants, Counter-Plaintiffs,
    and Third-Party Plaintiffs,

    v.

Mondi Packaging Akrosil, LLC, and
Mondi Packaging Minneapolis, Inc.,

    Third-Party Defendants.

---

Michael H. Streater, and Christianne Riopel Whiting, Briggs and Morgan, P.A., 2200 IDS Center, 80 South Eighth Street, Minneapolis, MN, 55402, for Plaintiff.

Charles W. Pautsch, and Lisa A. Baiocchi, Jackson Lewis LLP, 200 South Executive Drive, Suite 101, Brookfield, WI 53005, for Defendants.

Kerry L. Middleton, Littler Mendelson, P.C., 80 South Eighth Street, Suite 1300, Minneapolis, MN, 55402; and Jonathan O. Levine, Littler Mendelson, P.C., 250 East Wisconsin Ave., Milwaukee, WI, 53202, for Third-Party Defendants.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

    This matter is before the Court on the motion of Defendants Loparex, Inc., and Loparex, LLC, for "relief from judgment" (Doc. No. 230). Defendants seek relief from the Court's Order of January 20, 2010, granting Plaintiff Jon Hanson's motion for partial summary judgment. For the reasons stated below, this Court denies the motion.

## I.     FACTUAL AND PROCEDURAL SUMMARY

In May 2009, Hanson filed this action against Defendants Loparex Inc. and Loparex LLC (collectively, "Loparex") seeking a declaratory judgment that his non-compete agreement with Loparex, his former employer, was either invalid or terminated in August 2009.  (Doc. No. 1.)  Loparex's Answer included counterclaims against Hanson for tortious interference with contract and tortious interference with a prospective business relationship or contract.  (Doc. No. 5.)  Plaintiff then amended his Complaint to add a claim for tortious interference with a business expectancy, that is, a job offer from Third-Party Defendant Mondi Packaging Akrosil, LLC.  (Doc. No. 10.)  In response, Loparex amended its Answer to add additional counterclaims against Plaintiff.  (Doc. No. 16.)  Loparex also included a Third-Party Complaint against Third-Party Defendants Mondi Packaging Akrosil, LLC, and Mondi Packaging Minneapolis, Inc. (collectively, "Mondi"), asserting a claim for tortious interference with Loparex's non-compete agreement with Plaintiff.  (Id.)  Mondi was then dismissed from this action, however, in October 2009 pursuant to a stipulation.  (Doc. Nos. 111, 115.)

In December 2009, this Court permitted discovery of certain information on Hanson's computer.  (Doc. No. 164, at 2.)  Although the action had been contingently settled in February 2010, in June 2010 the Court, pursuant to the parties' stipulation, permitted the litigation to continue based on some e-mails Loparex obtained from the search of that computer.  (Doc. Nos. 184, 185.)  Accordingly, Loparex filed its Second Amended Answer, which again named Mondi as Third-Party Defendants and added new

counterclaims against Hanson as well as four additional third-party claims against Mondi based on the newly-discovered e-mails. (Doc. No. 183.) On December 7, 2010, the Court denied Loparex's motion to amend to add an additional claim for misappropriation of trade secrets. (Doc. No. 317.)

In the interim, Hanson moved for partial summary judgment, seeking an order "declaring that his non-compete obligations" are unenforceable, "and that the non-compete obligations terminated on August 9, 2009." (Doc. No. 46.) On January 20, 2010, the Court (Chief Judge Davis) granted Hanson's motion. (Doc. No. 171.) Loparex now moves for relief from the January 20, 2010 Order. (Doc. No. 230.)

## II. DISCUSSION

### A. Because No Final Judgment Has Issued, Loparex's Motion Is Governed By Rule 54(b) Rather Than By Rule 60(b)

Loparex originally requested "relief from the Court's January 20, 2010 order for partial summary judgment, pursuant to Federal Rule of Civil Procedure 60(b)." (Doc. No. 230.) Loparex contended that reconsideration of the January 20 Order is appropriate due to (1) "newly discovered evidence," and (2) "the fraud, misrepresentation, and misconduct of" Hanson. (Doc. No. 230-1.) Loparex frames the issues in this manner under the assumption that relief from that Order would be governed by Rule 60(b)(2) or 60(b)(3). Rule 60(b) enumerates six grounds for relief from a final judgment or order, including "newly discovered evidence" and "fraud . . . misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(2), (3).

In response, Hanson contends that Loparex's motion should be considered as a

motion for reconsideration under Rule 54(b). (Doc. No. 252, at 5 n.2.) In reply, Loparex agrees, and argues that the standard for such relief under Rule 54(b) is less demanding than that governing relief under Rule 60(b). (Doc. No. 267, at 2-3.)

As Hanson correctly observes, the January 20, 2010 Order does not constitute a *final* judgment or order, as Hanson had moved for *partial* summary judgment, seeking a declaration that the various restrictions in his employment agreement were invalid, or that the period during which those restrictions applied had expired. The Court granted that motion, but in accordance with the fact that Hanson had sought only partial summary judgment, the resulting Order of January 20, 2010 did not direct the entry of judgment, or even a partial judgment. Because there is no final judgment or order, Loparex may not seek relief under Rule 60(b). Childers v. Slater, 197 F.R.D. 185, 190-91 (D.D.C. 2000) (applying Rule 54(b), rather than Rule 60(b), to a request for reconsideration of an order granting partial summary judgment).

The Eighth Circuit has recognized that under Rule 54(b) an interlocutory order "is subject to revision at any time before the adjudication of all of the claims." Stewart v. Bishop, 403 F.2d 674, 680 (8th Cir. 1968).[1] Rule 54(b) itself does not provide any particular standard governing such revisions, but the courts generally have concluded that the standard under Rule 54(b) "differs from the standards applied to final judgments under Federal Rules . . . 59(e) and 60(b)." Williams v. Savage, 569 F. Supp. 2d 99, 108

---

[1] This Court notes that under the Local Rules, a motion "to reconsider" is "prohibited except by express permission of the Court, which will be granted only upon a showing of compelling circumstances." D. Minn. LR 7.1(h). But the Court does not understand this Local Rule to govern a motion for modification under Rule 54(b).

4

(D.D.C. 2008). As the advisory committee notes to Rule 60 explain, while Rule 60(b) affords relief from a final judgment, order or proceeding, "interlocutory judgments are not brought within the restrictions of [that] rule," but rather "are left subject to the complete power of the court rendering them to afford such relief from them *as justice requires*." Fed. R. Civ. P. 60(b), adv. cmte. notes (emphasis added); see Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1469-70, 1472-73 (4th Cir. 1991).

"[C]ourts have more flexibility in applying Rule 54(b)" than in applying Rule 60(b). Moore v. Hartman, 332 F. Supp. 2d 252, 256 (D.D.C. 2004). Courts apply a variety of standards under Rule 54(b). Id. at 257 & n.7; Cobell v. Norton, 224 F.R.D. 266, 272 (D.D.C. 2004). "Each of these standards leaves within the ambit of the Rule 54(b) reconsideration inquiry a good deal of space for the Court's discretion." Cobell, 224 F.R.D. at 272. Many courts recognize that the discovery of new facts could justify modification of an existing interlocutory order. E.g. Gallant v. Telebrands Corp., 35 F. Supp. 2d 378, 394, 395 (D.N.J. 1998) ("Vacation of a partial summary judgment order is warranted where the newly discovered evidence is non-cumulative of the evidence previously available.").

But this Court need not decide the exact parameters of the Rule 54(b) standard for revision, because none of the evidence Loparex now presents warrants modification, under any applicable standard, of any of the issues decided in the January 20 Order.

### B. There Is No Basis To Modify, Revise or Otherwise Relieve Loparex From The January 20 Order

#### 1. The January 20 Order

In granting Hanson's motion for partial summary judgment, the January 20 Order addressed the various non-compete provisions included in the June 30, 2006 employment agreement that Hanson entered into with Loparex. Pursuant to those provisions, Hanson agreed (1) not to disclose, while employed by Loparex or anytime thereafter, Loparex's confidential information, and (2) for a period of twenty four months after the cessation of "employment or service" with Loparex, (a) not to be employed in certain capacities by any of Loparex's competitors anywhere Loparex does business (the "business clause"), (b) not to solicit business from or perform services for any of Loparex's customers with which Hanson had contact in the thirty-six month period before termination (the "customer clause"), and (c) not to solicit or hire (or attempt to solicit or hire) any person who was an employee of Loparex during the six months before any such solicitation. (Doc. No. 53, § III.3-.4; see Doc. No. 171, at 2-3 (summarizing non-compete provisions of agreement).) The only provisions at issue here are Hanson's agreement not to work for any of Loparex's competitors for two years after working for Loparex and his agreement not to solicit business from any of Loparex's customers for the same two-year period.

Hanson actively worked for Loparex from July 1, 2006 to August 8, 2007. On August 8, 2007, Loparex's President and CEO sent Hanson a letter that while not terminating Hanson, essentially idled him by relieving Hanson of his duties and re-assigning him to "special projects" that might arise. (Doc. No. 171, at 3-4.) Despite

Hanson being "on call" through June 30, 2009, the end of his contracted-for employment period, Loparex assigned Hanson no special projects or other work. (Id. at 5.) In the interim, Hanson accepted a sales position with Mondi, and began working for Mondi on August 10, 2009.

After concluding that Wisconsin law governed the employment agreement, the Court addressed whether "the business clause" and "the customer clause" were valid and enforceable. The Court found the "business clause" unenforceable as over-broad because it purported to prohibit Hanson from working for a competitor in any capacity. (Id. at 14-18 .) With respect to the "customer clause," however, the Court ruled that it was not over-broad because Hanson had been employed for over twenty years by, and served as the President of, his father's company before it was acquired by Loparex, such that Hanson would likely have knowledge of the business's customers that would justify a broad customer solicitation restriction. (Id. at 18-20.)

The Court further ruled that Hanson ceased providing employment services to Loparex in August 2007 when he was "idled," and thus that the twenty-four month period of the non-compete clause expired on August 9, 2009. (Id. at 21.) The Court expressly stated that "Loparex does not contest the fact that Plaintiff did not provide any employment services to Loparex once Plaintiff was told to stay home," further noting that Hanson "did not receive any new business information after that time." (Id. at 22.)

In opposing Hanson's motion for summary judgment, Loparex relied on the Affidavit of Jack Taylor, then Loparex's Chief Operating Officer and previously its

President and Chief Executive Officer. Taylor expressly stated that he "did not assign [Hanson] any special projects after" relieving Hanson of his regular duties on August 8, 2007, but retaining him on the payroll for "special projects." (Doc. No. 135, ¶ 20.) Nevertheless, Loparex contended that the twenty-four month period should not begin until June 30, 2009. (Doc. No. 134, at 10 n.8.) The Court, however, rejected that argument, concluding that it was "undisputed that Plaintiff ceased providing employment services to Loparex as of August 2007 and did not receive any new business information after that time." (Doc. No. 171, at 22.) Thus, to obtain relief from the January 20, 2010 Order, Loparex would need to provide new evidence that Hanson in fact continued to work for Loparex after August 8, 2007.

### 2. The New Evidence

Loparex now relies on several e-mails that were produced after the January 20 Order, contending that the documents "clearly and convincingly demonstrate that the 'undisputed testimony' relied on by the Court in rendering the January 20, 2010 Order was based on fraudulent information presented by Hanson and Mondi." (Doc. No. 230-1 at 2.) Loparex also relies on the fact that Hanson reformatted his hard drive on September 10, 2009, while in the midst of discovery and several days before Hanson resigned from Mondi and several weeks before his September 30, 2009 deposition. (Id. at 3.) Finally, Loparex relies on two sales documents generated during Hanson's brief tenure at Mondi to support its claim that Hanson made sales for Mondi as early as January 2009. (Doc. No. 372.)

None of this evidence, however, even if "newly-discovered" by Loparex, warrants relief from the January 20 Order under any applicable standard. The evidence at issue is irrelevant to either of the substantive questions addressed by the Court in the January 20 Order.[2] First, the question of the validity of the "business clause" is an issue that turns on whether the particular terms of such a restriction are reasonable under Wisconsin law. None of the evidence Loparex now offers can alter either the terms of that provision or the law that governs its validity. Second, with respect to the question of whether Hanson had ceased working for Loparex in August 2007 so as to trigger the twenty-four month period of the non-compete provisions, the Court likewise finds that the evidence Loparex now presents fails to warrant any "relief" from the January 20 Order, as none of it undermines the Court's conclusion that Hanson performed no duties for Loparex after August 8, 2007.[3]

---

[2] The Court also decided that Wisconsin, rather than Minnesota, law governed whether the restrictive covenants were valid, but Loparex's motion does not take issue with that part of the decision.

[3] The Court notes that in seeking relief from that Order, Loparex now offers evidence that pertains more to an allegation of Hanson's misconduct (whether a violation of his obligations under the agreement or some other impropriety) rather than to the date of the cessation of his employment duties with Loparex. In fact, Loparex argues that the new evidence demonstrates "that *Hanson violated the terms of his non-compete agreement with Loparex*." (Doc. No 230-1, at 9 (emphasis added).) But the January 20 Order did not address whether Hanson violated any of his obligations to Loparex. Nevertheless, Loparex now contends, although without any adequate explanation, that Hanson's contacts with certain individuals involved in the industry "prevented the obligations" of the non-compete provisions "from terminating on August 9, 2009." (Doc. No. 230-1, at 13.) The Court notes that Hanson's employment agreement with Loparex included a provision, although in a section regarding judicial construction of the scope and extent of Hanson's covenants, stating that "[t]he period of time applicable to any

(continued...)

### (a) Hanson's Deposition Testimony

With respect to the e-mails Loparex claims warrant revision of the January 20 Order, Loparex focuses first on an undated e-mail from Hanson to Mark Rostagno, Mondi's Vice President and General Manager, and copied to Thomas Schäbinger of Mondi Coatings, in which Hanson states that his boss at Mondi asked him to lie in a deposition. Loparex contends that this e-mail, coupled with "other facts and properly drawn inferences," establishes that "Hanson actively lied throughout this case" (and that Mondi likely also lied). (Doc. No. 230-1, at 4-5.)

But the e-mail could establish, at most, that such a request was made. It cannot, standing alone, establish that Hanson then in fact acquiesced and lied. Moreover, Hanson

---

[3](...continued)
covenant in this Article III will be extended by the duration of any violation by the Employee of such covenant." (Doc. No. 53, § III.5.) Insofar as Loparex is thus now arguing that Hanson's alleged breaches of the employment agreement operate to extend the otherwise twenty-four month period of the non-compete provisions, the Court rejects any implicit argument that the restrictions did not end on August 9, 2009. First, a motion for relief from an interlocutory order is properly confined to matters expressly addressed in that order. As noted above, the January 20, 2010 Order did not address any alleged breaches. Second, the validity and precise effect of the continuing violation provision is unclear. Third, if extending the term of the various restrictions is the intent of Loparex in the present motion, it has not articulated any such argument with sufficient clarity and focus. Hanson's response to Loparex's motion plainly points out that the evidence on which Loparex relies does not change the law or facts pertinent to the questions actually decided in the January 20, 2010 Order. (Doc. No. 252, at 11-15.) Yet Loparex's reply does nothing to clarify that its argument is premised on the extension of the twenty-four month period of the non-compete provisions due to alleged breaches of those covenants. Rather, Loparex simply addresses more evidence of what it claims establishes that "Hanson remained an active participant in the [release liner] market." (Doc. No. 267, at 4-12.) Loparex's concluding assertion at the end of its Reply Brief, that by violating those covenants Hanson "renewed his obligations so they continue to run today" (id. at 12), fails to sufficiently highlight and focus any argument based on Section III.5 of the agreement, a provision that Loparex nowhere directly discusses.

clarified that he did not in fact lie during his deposition, and that Mondi did not even actually ask Hanson to lie. (Doc. No. 254, ¶¶ 5, 6.) Hanson understood that his boss at Mondi wanted Hanson to testify that he had not disclosed to Mondi any information concerning Loparex's customers. (Id. ¶ 4.) Hanson further clarified that his statement in the e-mail was due to his frustration and anger with Mondi at the time. (Id. ¶ 6.) And as Hanson observes, because Loparex has not deposed Hanson or anyone at Mondi on this point, Loparex is simply unable to controvert Hanson's explanation. (Doc. No. 252, at 7.)

### (b) 3M's Extrusion Capabilities

Loparex also seizes upon Hanson's September 28, 2009 e-mail to Schäbinger, in which Hanson refers to what Loparex claims is "confidential proprietary information regarding Loparex customer 3M's extrusion capabilities that Hanson previously relayed to Mondi executives." (Doc. No. 230-1, at 5.) Loparex asserts that "[t]he only way that Hanson could learn of 3M's extrusion capabilities was through substantive business contacts with 3M executives." (Id. at 6.) Loparex argues that the newly-discovered e-mail from Hanson demonstrates that Hanson was "maintaining substantive business relationships with 3M employees after August 8, 2007." (Id. at 12.) Finally, Loparex notes that Hanson–in his briefing in support of his motion for partial summary, as well as in his declaration and deposition–denied having any substantive business contacts with Loparex's customers. (Id. at 6.)[4]

The Court already has ruled that Hanson's knowledge of 3M's plans to add

---

[4] Loparex also contends that Hanson's counsel, Briggs & Morgan, P.A., participated in such misconduct. (Id. at 8-9.) The Court finds such allegations meritless.

11

extrusion capability to one of its own plants, which Hanson obtained from a 3M employee, could not constitute a trade secret of Loparex. (Doc. No. 317 (denying Loparex's motion to amend to add a claim for misappropriation of trade secrets).)

In any event, Loparex has failed to explain how Hanson's knowledge of 3M's plans, or his disclosure of those plans to Mondi, impact in any way on the Court's determination that Hanson ceased working for Loparex on August 8, 2007, thereby triggering the twenty-four month non-compete provisions. Granted, Hanson learned of 3M's plans in the fall of 2008 while on a hunting trip with his friend who worked for 3M. But this does not establish that Hanson was still somehow actively working for Loparex at that time or at any time after August 2007. There is no evidence, for example, that Taylor, or anyone else at Loparex, assigned Hanson–as a "special project"–to employ his personal friendships with others in the industry to solicit confidential information from Loparex's competitors or customers.

And Loparex simply fails to explain how "Hanson's substantive business contacts with [Hanson's friends in the industry] prevented the obligations of the [agreement] from terminating on August 9, 2009." (Doc. No. 230-01, at 13.) Moreover, insofar as Loparex is claiming that Hanson's e-mail somehow violates any of the provisions of his employment agreement, the January 20, 2010 Order does not address any claims that Hanson breached any of his obligations to Loparex.

      **(c)  Hanson's Sales For Mondi**

Loparex also bases its motion for relief from partial summary judgment on claims

that Hanson was making sales for Mondi during the twenty-four month non-compete period based on a document that Loparex contends is evidence that Hanson was assigned numerous Mondi customers as well as a spreadsheet that Loparex argues reflects substantial sales Hanson made for Mondi between January and July 2009. (Doc. No. 372.) Loparex contends that a sales summary shows that "Hanson sold products for Mondi from January to July 2009, violating the terms of the 'customer clause' provision and remaining . . . provisions of the employment agreement." (Id. at 5-6.)

The evidence on which Loparex now relies for that assertion does not establish that Hanson was making sales for Mondi before August 2009. Mondi denies that Hanson made any sales for Mondi, not only from January to July 2009, but also even after Hanson began working for Mondi on August 10, 2009. Mark Rostagno, Mondi Akrosil's Vice-President and General Manager in charge of North American operations and sales, states that Hanson was offered the position only in July 2009, did not begin working for Mondi until August 10, 2009, and resigned some six weeks later in September 2009. (Doc. No. 390, ¶ 3.) Rostagno clarifies that not only did Hanson "not make any sales for Mondi before or during his brief employment" by Mondi, but that Hanson was not "asked or directed to do anything on Mondi's behalf before he started working for" Mondi. (Id. ¶ 4.)

Rostagno also refutes Loparex's arguments as to the significance of the particular Mondi documents on which Loparex relies. A report generated on August 24, 2009, after Hanson started working for Mondi, simply lists Mondi accounts with the associated sales

representatives (among others), showing that Hanson was listed as the sales representative for Avery-Dennison, for example, as it was within Hanson's geographic territory. The report simply reflects that Hanson's name was inserted "into the previously unassigned accounts in [Hanson's] territory, including Avery-Dennison," but that "Hanson did not make any sales to Avery-Dennison while he was employed by Mondi." (Doc. No. 390, ¶¶ 6-7.) In short, the report does not reflect any sales actually made by Hanson, much less any before August 2009.

Similarly, a monthly sales history report, which was generated on about September 1, 2009, reflects sales to various Mondi customers from January through July 2009. Although Hanson's name was inserted in the report after he started working for Mondi, Rostagno clarified that the report does not reflect that Hanson made any sales before his August 10, 2009 start date, but simply provides Hanson with the history of former sales made to the customers to which he was then assigned. (Id. ¶ 8.) As Mondi notes, "[a]lthough the report shows that *Mondi* made sales between January and July 2009, it does not show that Hanson made any of these sales." (Doc. No. 388, at 4 (emphasis in original).) In fact, Mondi asserts that Hanson never made any sales to any customer of Mondi during the brief period Mondi employed Hanson from August 10, 2009 until September 2009. Mondi also notes that Loparex's allegation of Hanson's sales in the first half of 2009 is inconsistent with the fact that Hanson was seeking a position with Mondi as late as April 22, 2009 and that Mondi did not offer the position to him until June 23, 2009. (Id., ¶ 9 & Exs. 1, 2.)

### (d) Spoliation

Similarly, Loparex's allegations that Hanson has spoliated evidence by reformatting the hard drive of his computer have no impact on the question of whether Hanson ceased providing any services as an employee to Loparex in August 2007. Moreover, the only evidence regarding Hanson's computer is confined to the report by Kroll Ontrack, which merely states that the hard drive was "reformatted and reinstalled on September 10, 2009." (Doc. No. 230-1, Ex. A.) There is no evidence that any relevant information was thereby lost, much less that Hanson intentionally or recklessly destroyed such information.

### (e) Hanson's Ongoing "Participation" In The Industry

Finally, Loparex relies on various documents that it contends support its assertion that "Hanson remained an active participant in the release liner market after August 2007." (Doc. No. 267, at 2; id. at 7 ("This information provides further evidence that Hanson stayed actively informed of all aspects related to the release liner market.").) Loparex points to several e-mails from Hanson to Thomas Schäbinger at Mondi during the period from September 2008 through March 2009. (Id. at 4-6.) But none of the evidence has any bearing on the two issues on which the Court ruled in that decision, particularly the question of when the two-year non-compete period began.

Similarly, Loparex contends that Hanson made sales for Mondi in September 2009. (Doc. No. 267, at 7-9.) Again, Mondi denies that Hanson ever made any sales for it. Moreover, such sales are irrelevant to the matters decided in the January 20, 2010

Order because any such sales, even assuming they were achieved by Hanson, would fall outside of the two-year period of the non-compete restrictions that ended in August 2009. Loparex's final allegation, that "Hanson's fraud culminates in a series of e-mails . . . detailing how Hanson and Mondi conspired to conceal evidence" of his sales (<u>id.</u> at 10-12), is without merit. The e-mails simply cannot bear the interpretation Loparex attempts to thrust upon them.

Accordingly, there simply is no basis to revise, modify or otherwise disturb the January 20 Order.

## III.  ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Loparex's motion for relief from judgment [Doc. No. 230] is **DENIED**.

Dated:  July 18, 2011                                s/ Susan Richard Nelson
                                                    SUSAN RICHARD NELSON
                                                    United States District Judge