# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Jon Hanson,                                          Civil No. 09-1070 (SRN/FLN)

      Plaintiff and Counter-Defendant,

      v.                                          **MEMORANDUM OPINION**
                                                          **AND ORDER**

Loparex, Inc., and Loparex, LLC,

      Defendants, Counter-Plaintiffs,
      and Third-Party Plaintiffs,

      v.

Mondi Packaging Akrosil, LLC, and
Mondi Packaging Minneapolis, Inc.,

      Third-Party Defendants.

---

Michael H. Streater, and Christianne Riopel Whiting, Briggs and Morgan, P.A., 2200 IDS Center, 80 South Eighth Street, Minneapolis, MN, 55402, for Plaintiff.

Charles W. Pautsch, and Lisa A. Baiocchi, Jackson Lewis LLP, 200 South Executive Drive, Suite 101, Brookfield, WI 53005, for Defendants.

Kerry L. Middleton, Littler Mendelson, P.C., 80 South Eighth Street, Suite 1300, Minneapolis, MN, 55402; and Jonathan O. Levine, Littler Mendelson, P.C., 250 East Wisconsin Ave., Milwaukee, WI, 53202, for Third-Party Defendants.

---

SUSAN RICHARD NELSON, United States District Judge

      This matter is before the Court on the motions for summary judgment by Plaintiff

Jon Hanson (Doc. No. 358), by Third-Party Defendants Mondi Packaging Akrosil, LLC,

and Mondi Packaging Minneapolis, Inc. (Doc. No. 356), and by Defendants Loparex,

Inc., and Loparex, LLC (Doc. No. 362).  For the reasons stated below, this Court denies

Loparex's motion (in part as moot), and grants Hanson's and Mondi's motions.

I.      **FACTUAL AND PROCEDURAL SUMMARY**

A.      **Claims, Counterclaims and Third-Party Claims**

In May 2009, Hanson filed this action against Defendants Loparex Inc. and

Loparex LLC (collectively, "Loparex") seeking a declaratory judgment that his June 30,

2006 non-compete agreement with Loparex, his former employer, was either invalid or

terminated in August 2009.  (Doc. No. 1.)  Loparex's Answer included counterclaims

against Hanson for tortious interference with contract and tortious interference with a

prospective business relationship or contract.  (Doc. No. 5.)  Plaintiff then amended his

Complaint to add a claim for tortious interference with a business expectancy, that is, a

job offer from Third-Party Defendant Mondi Packaging Akrosil, LLC.  (Doc. No. 10.)  In

response, Loparex amended its Answer to add additional counterclaims against Plaintiff.

(Doc. No. 16.)  Loparex's Amended Answer also initiated a third-party action against

Third-Party Defendants Mondi Packaging Akrosil, LLC, and Mondi Packaging

Minneapolis, Inc. (collectively, "Mondi"), asserting a claim for tortious interference with

Loparex's non-compete agreement with Plaintiff.  (Id.)  In October 2009, however,

Mondi was dismissed from this action, pursuant to a stipulation.  (Doc. Nos. 111, 115.)

In December 2009, the Court permitted discovery of certain information on

Hanson's computer.  (Doc. No. 164, at 2.)  Although the action had been contingently

settled in February 2010, in June 2010 the Court, pursuant to the parties' stipulation,

permitted the litigation to continue based on some e-mails Loparex obtained from the

search of that computer.  (Doc. Nos. 184, 185.)  Accordingly, Loparex filed its Second

Amended Answer, which again named Mondi as Third-Party Defendants and added new counterclaims against Hanson as well as four additional third-party claims against Mondi based on the newly-discovered e-mails.  (Doc. No. 183.)  On December 7, 2010, the Court denied Loparex's motion to amend to add an additional claim for misappropriation of trade secrets.  (Doc. No. 317.)

### B.      Summary Judgment Motions

In the interim, Hanson moved for partial summary judgment, seeking an order declaring that his non-compete obligations are unenforceable and, in any event, that those obligations terminated on August 9, 2009.  (Doc. No. 46.)  On January 20, 2010, the Court (Chief Judge Davis) granted Hanson's motion.  (Doc. No. 171.)  In October 2010, Loparex moved for relief from the January 20, 2010 Order.  (Doc. No. 230.)  This Court denied that motion.  (Doc. No. 459.)

### 1.      The January 20, 2010 Order

In granting Hanson's motion for partial summary judgment, the January 20, 2010 Order addressed the various non-compete provisions included in the June 30, 2006 employment agreement that Hanson entered into with Loparex.  Pursuant to those provisions, Hanson agreed (1) while employed by Loparex or anytime thereafter, not to disclose Loparex's confidential information, and (2) for a period of twenty four months after the cessation of "employment or service" with Loparex, (a) not to be employed in certain capacities by any of Loparex's competitors anywhere Loparex does business (the "business clause"), (b) not to solicit business from or perform services for any of

Loparex's customers with which Hanson had contact in the thirty-six month period before termination (the "customer clause"), and (c) not to solicit or hire (or attempt to solicit or hire) any person who was an employee of Loparex during the six months before any such solicitation.  (Doc. No. 53, § III.3-.4; <u>see</u> Doc. No. 171, at 2-3 (summarizing non-compete provisions of agreement).)

Hanson's June 30, 2006 employment agreement with Loparex provided for a three-year term as its global account manager for 3M, to be followed by an at-will relationship.  Hanson actively worked for Loparex, however, only from July 1, 2006 to August 8, 2007.  On August 8, 2007, Loparex's President and CEO, Jack Taylor, while not terminating Hanson, essentially idled him by relieving him of his duties and re-assigning him to "special projects" that might arise.  (Doc. No. 171, at 3-4.)  Despite Hanson being "on call" at his home through June 30, 2009, the end of his contracted-for employment period, Loparex assigned Hanson no special projects or other additional work.  (<u>Id.</u> at 5.)  In the interim, Hanson accepted a sales position with Mondi, one of Loparex's competitors, and began working for Mondi on August 10, 2009.

After concluding that Wisconsin law governed the employment agreement, the Court addressed whether "the business clause" and "the customer clause" were valid and enforceable.  The Court found the "business clause" unenforceable as over-broad because it purported to prohibit Hanson from working for a competitor in any capacity.  (<u>Id.</u> at 14-18 .)  With respect to the "customer clause," however, the Court ruled that it was not over-broad because Hanson had been employed for over twenty years by, and served as

the President of, his father's company before it was acquired by Loparex, such that Hanson would likely have knowledge of the business's customers that would justify a broad customer solicitation restriction.  (Id. at 18-20.)

The Court further ruled that Hanson ceased providing employment services to Loparex in August 2007 when he was "idled," and thus that the twenty-four month period of the non-compete clause expired on August 9, 2009.  (Id. at 21.)   The Court expressly stated that "Loparex does not contest the fact that Plaintiff did not provide any employment services to Loparex once Plaintiff was told to stay home," further noting that Hanson "did not receive any new business information after that time."  (Id. at 22.)

In opposing Hanson's motion, Loparex relied on the Affidavit of Jack Taylor, then Loparex's Chief Operating Officer and previously its President and Chief Executive Officer.  Taylor expressly stated that he "did not assign [Hanson] any special projects after" relieving Hanson of his regular duties on August 8, 2007, but retaining him on the payroll for "special projects."  (Doc. No. 135, ¶ 20.)  Nevertheless, Loparex contended that the twenty-four month period should not begin until June 30, 2009.  (Doc. No. 134, at 10 n.8.)  The Court, however, rejected that argument, concluding that it was "undisputed that Plaintiff ceased providing employment services to Loparex as of August 2007 and did not receive any new business information after that time."  (Doc. No. 171, at 22.)

On July 18, 2011, this Court denied Loparex's motion for relief from the January 20, 2010 Order.  (Doc. No. 459.)  Accordingly, Judge Davis's decision remains the law of the case.

### 2.     Motions For Summary Judgment On The Remaining Claims

The remaining claims after Judge Davis's January 20, 2010 Order thus include:

(1)     Hanson's claim against Loparex for tortious interference with a business expectancy.  (Doc. No. 10 (Amended Complaint, Count III).)

(2)     Loparex's counterclaim against Hanson for tortious interference with contract. (Doc. No. 183 (Second Amended Answer and Counterclaims, Count I).)

(3)     Loparex's counterclaim against Hanson for tortious interference with a prospective business relationship or contract.  (<u>Id.</u> (Count II).)

(4)     Loparex's counterclaim against Hanson for breach of contract.  (<u>Id.</u> (Count III).)

(5)     Loparex's counterclaim against Hanson for breach of fiduciary duty.  (<u>Id.</u> (Count IV).)

(6)     Loparex's counterclaim against Hanson for misappropriation of confidential information.  (<u>Id.</u> (Count V).)

(7)     Loparex's counterclaim against Hanson for unfair competition.  (<u>Id.</u> (Count VI).)

(8)     Loparex's counterclaim against Hanson for fraudulent omissions, concealment, destruction, and misrepresentation with contract.  (<u>Id.</u> (Count VII).)

(9)     Loparex's counterclaim against Hanson for civil conspiracy.  (<u>Id.</u> (Count VIII).)

(10)     Loparex's third-party claim against Mondi for tortious interference with contract. (Doc. No. 183 (Second Amended Third-Party Complaint, Count I).)

(11)     Loparex's third-party claim against Mondi for tortious interference with a prospective business relationship or contract.  (<u>Id.</u> (Count II).)

(12)     Loparex's third-party claim against Mondi for unfair competition.  (<u>Id.</u> (Count III).)

(13)     Loparex's third-party claim against Mondi for fraudulent omissions, concealment, destruction, and misrepresentation.  (<u>Id.</u> (Count IV).)

(14)     Loparex's third-party claim against Mondi for civil conspiracy.  (<u>Id.</u> (Count V).)

The Court observes that there is substantial overlap between Loparex's various counterclaims (and third-party claims) in terms of the underlying alleged wrongdoing in support of each claim.  The Court also notes that Loparex's present arguments often differ from what it originally alleged in its Second Amended Answer.

With one exception, all parties now move for summary judgment on all remaining claims.  Hanson moves for summary judgment on all of Loparex's counterclaims.  (Doc. No. 358.)  Likewise, Mondi moves for summary judgment on all of Loparex's third-party claims.  (Doc. No. 356.)  Finally, Loparex moves for summary judgment on all of its counterclaims against Hanson and all of its third-party claims against Mondi.  (Doc. No. 362.)  Loparex also moves for summary judgment on Hanson's remaining claim for tortious interference with a business expectancy.  (Id.)[1]

With the exception of this final claim, for which Hanson, contending that it is now moot, does not seek summary judgment, the parties have effectively filed cross-motions for summary judgment.  Moreover, Loparex's five third-party claims against Mondi largely parallel five of Loparex's eight counterclaims against Hanson.  The Court first turns to those eight claims of Loparex before addressing Hanson's sole remaining claim.[2]

---

[1]     Finally, Loparex moves for leave to admit a notarized signature page of an affidavit submitted in support of its summary judgment submissions.  (Doc. No. 415.)

[2]     The Court previously concluded that Wisconsin law applied to the questions of the validity and scope of the employment agreement, which contained a choice-of-venue, but not a choice-of-law, provision.  (Doc. No. 171.)  Loparex thus contends that Wisconsin law applies to the present issues, with the exception of its counterclaim and third-party claim for fraudulent omissions, concealment, destruction, and misrepresentation.  (Doc. No. 411, at 6 n.2.)  Similarly, Mondi asserts that the Court

(continued...)

## II.    DISCUSSION

### A.    Summary Judgment Standard

Where, as here, the parties file cross motions for summary judgment, the court's analysis does not change as the court addresses each motion separately.  A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  With respect to Loparex's motion for a judgment on its claims, because it would have the burden of proof at trial on its counterclaims and third-party claims, it bears the burden here of producing evidence that is "conclusive."  <u>Vargas v. Santiago Cummings</u>, 149 F.3d 29, 35-36 (1st Cir. 1998).  But with respect to Hanson's and Mondi's motions, once they show an absence of evidence to support Loparex's claims, Loparex bears the burden, to avoid judgment for Hanson or Mondi, of showing a genuine issue of material fact.  <u>Beyer v. Firstar Bank, N.A.</u>, 447 F.3d 1106, 1108 (8th Cir. 2006).  The facts must be construed, and all reasonable inferences must be drawn, in favor of the respective non-moving party.  <u>Palesch v. Missouri Comm'n on Human Rights</u>, 233 F.3d 560, 565 (8th Cir. 2000).

---

[2](...continued)
correctly applied Wisconsin law, but that the outcome of the present motions is the same under Wisconsin or Minnesota law.  (Doc. No. 408, at 19-21; Doc. No. 420, at 7 n.2.)  Hanson simply notes that the Court previously applied Wisconsin law and does not expressly advocate the application of the law of any other state.  Here, the issues go beyond matters of contract interpretation that the Court previously addressed.  For example, the parties have asserted various tort claims.  Nevertheless, in the absence of any dispute between the parties on the applicable law, this Court discerns no reason not to apply Wisconsin law to the entire dispute, with the exception of the above-noted counterclaim and third-party claim of Loparex, on which the parties do not dispute that Minnesota law should apply.

### B.    Loparex's Counterclaims and Third-Party Claims

Loparex's eight counterclaims against Hanson (five of which are also directed at Mondi as third-party claims) are largely premised on certain allegations of wrongdoing that underlie many of Loparex's claims.  In light of these relationships between the various counterclaims (and any parallel third-party claims), the Court will first address what might be deemed Loparex's "primary" claims:  (1) breach of the employment agreement, (2) breach of fiduciary duty, (3) misappropriation of confidential information, (4) unfair competition, and (5) tortious interference with contract.  The Court will then turn to Loparex's "secondary" claims:  (1) tortious interference with a prospective business relationship, (2) fraudulent omissions, concealment, destruction and misrepresentation, and (3) civil conspiracy.

### 1.    Breach of Contract

Insofar as the relationship between Loparex and Hanson was governed by a contract, that is, the employment agreement, Loparex's central claim is arguably breach of contract.  Loparex claims that Hanson breached the non-compete provisions of his employment contract with Loparex, particularly the confidentiality clause, the prohibition against soliciting Loparex's customers and the provision regarding hiring Loparex employees.  (Doc. 411, at 7-8.)[3]  Loparex contends that Hanson (1) disclosed confidential, proprietary information concerning Loparex and its customers to Mondi; (2) participated

---

[3]    The fourth restrictive covenant, that purporting to prohibit Hanson from working for any competitor, was deemed invalid and unenforceable in the January 20, 2010 Order.  (Doc. No. 171.)

in substantive business contacts with Loparex customers; and (3) continuously solicited Loparex employees or recently departed Loparex employees for employment with Mondi. (Doc. No. 411, at 10.)

Before addressing the question whether Hanson breached any of those prohibitions, however, the Court must first address the validity of the three remaining restrictive covenants, an issue that turns in part on the applicable period of the post-employment restrictions.  In its January 20, 2010 Order, the Court ruled that the twenty-four month non-compete provisions terminated on August 10, 2009 because Hanson's service for Loparex ended when Loparex "sidelined" Hanson in August 2007.  (Doc. No. 171, at 21-23.)  The Court applied that period to the business clause, the customer clause and the employee clause.  That period, however, did not apply to the confidentiality clause.

### (A)    The Confidentiality Clause

The confidentiality clause provides that "[w]hile [Hanson] is employed by [Loparex] *and thereafter*," he will not disclose any of Loparex's confidential information. (Ex. 53, § III.3 (emphasis added).)  Under Wisconsin law, such "restraints may be unreasonable by a limitation that is overbroad in terms of geographic area or time."  Gary Van Zeeland Talent, Inc. v. Sandas, 267 N.W.2d 242, 250 (Wis. 1978).  Thus, a covenant purporting to prohibit a former employee from disclosing confidential information such as a customer list is an unreasonable restraint of trade where the prohibition is "without time limitation."  Id.  Accord Sysco Food Services of Eastern Wisconsin, LLC v. Ziccarelli,

445 F. Supp. 2d 1039, 1052-53 (E.D. Wis. 2006) (holding that confidentiality clause purporting to restrict disclosures "for 'all times thereafter'" is "on its face void and unenforceable"). See Nalco Chemical Co. v. Hydro Technologies, Inc., 984 F.2d 801, 804 (7th Cir. 1993) (holding that confidentiality clause that "does not contain a durational limitation on the dissemination" is void and unenforceable under Wisconsin law).

In any event, much, if not all, of the information Loparex claims Hanson unlawfully disclosed is not confidential. The agreement provides a somewhat awkward, if not unclear, definition of "Confidential Information":

> In the course of the Business, Company and its affiliates have acquired and are continually acquiring valuable formulae, compounds, devices, apparatus, manufacturing procedures and technical knowledge, useful in the business, and have been required to make substantial expenditures in order to develop and establish a stable customer base, to prepare and maintain a confidential customer information [sic], to develop confidential pricing methods and methods of administering warranties and handling claims, to instruct and train Employee managerial personnel, and to develop and improve formulae, compounds, devices, apparatus, manufacturing procedures and other technical knowledge (all of which are hereinafter collectively referred to as Company's "Confidential Information").

(Doc. No. 53, § III.1.) Thus it is somewhat unclear whether "Confidential Information" is confined to "formulae, compounds, devices, apparatus, manufacturing procedures and other technical knowledge," or whether it also extends to "confidential customer information," and "confidential pricing methods and methods of administering warranties and handling claims." Generally, restrictive covenants, which are inherently suspect, are interpreted narrowly and in the employee's favor. Star Direct, Inc. v. Dal Pra, 767 N.W.2d 898, 905 (Wis. 2009).

But even if the Court construes the definition broadly, much of what Loparex claims Hanson disclosed is not confidential.  For example, Loparex contends that Hanson "disclosed confidential information concerning the departure of Loparex employees," namely Mark Comansolli, who had served as Loparex's sales representative for Avery Dennison, and Steve Odders.  (Doc. No. 411, at 10.)  But the confidentiality clause does not extend to information concerning the departure of a Loparex employee.

Loparex also claims Hanson improperly disclosed to Mondi that Loparex was moving its headquarters before that information was publicly available.  But such news is likewise not within even the broadly-construed definition of "Confidential Information." Finally, Loparex argues that Hanson divulged confidential information concerning 3M's extruder capabilities to Mondi.  As this Court already has ruled, however, 3M's plan to install extruder capabilities in one of its own plants is not confidential information of Loparex.  (Doc. No. 317.)

In sum, even if the confidentiality clause would be valid, it was not violated.

### (B)    The Customer and Employee Clauses

With respect to the remaining restrictive covenants, Loparex now relies on a provision of the agreement that states that "[t]he period of time applicable to any covenant in [the agreement regarding Hanson's post-employment obligations to Loparex] will be extended by the duration of any violation by [Hanson] of such covenant."  (Doc. No. 411, at 9 (quoting Doc. 53, § III.5).)[4]  Loparex offers various calculations of the

---

[4]        The Court did not address the extension provision in its January 20, 2010

(continued...)

extended period, but without any explanation of how the purported extension clause would operate.  Loparex first contends that the covenants of Hanson's employment agreement–which, by the terms of the contract extend for twenty four months "after the cessation of [Hanson's] employment or service with [Loparex]"–"should be extended well beyond August 9, 2009 and continue into 2011."  (Id. at 9 n.3.)  Loparex also claims that "[e]ach one of Hanson's customer clause and employee solicitation clause violations . . . extended Hanson's valid non-complete provisions for an additional twenty-four months."  (Id. at 12-13.)  Finally, Loparex claims that the term of those prohibitions "run[s] for twenty-four months after [Hanson's] last day at Mondi, or until September 24, 2011."  (Id. at 13 (emphasis added).)

But taking the provision on its own terms, it does not purport to extend the length of the non-compete prohibitions, upon a violation of such restrictions, by simply adding another twenty-four months to the restricted period.  Nor does it provide that the twenty-four month period begins upon the termination of Hanson's employment with a different subsequent employer such as Mondi.  Rather, it purports to extend that period by a length of time equal to "the duration of any violation."  As is perhaps revealed by Loparex's own varying interpretations of the extension clause, it is not self-evident how to measure such an extension of the period.[5]

_____

[4](...continued)
Order, as it appears the parties did not raise it.

[5]    The Court also notes that, if there had been a violation of the agreement, it is not clear, under the purported terms of the provision, whether or for how long, any

(continued...)

The Court of Appeals of Wisconsin addressed an essentially identical provision of a non-compete agreement in H&R Block Eastern Enterprises, Inc. v. Swenson, 745 N.W.2d 421 (Wis. App. 2007).  An employment agreement contained non-competition and non-solicitation clauses under which the former employees at issue agreed to not engage in certain specified actions "for two (2) years following the voluntary or involuntary termination of [the employee's] employment (such period to be extended by any period(s) of violation)."  Id. at 424.  The court, applying Wisconsin law, explained that the applicable statute governing restrictive employment covenants "expresses a strong public policy against the enforcement of unreasonable trade restraints on employees," and that to be enforceable, such a provision must, among other requirements, "provide a reasonable time limit."  Id. at 426 (noting further that restrictive covenants of any duration "are prima facie suspect").

The Wisconsin court concluded that "the extension provision makes the duration of the restraints unreasonable for two independent reasons."  Id. at 427.  The court noted that the application of such an extension provision to the non-compete and non-

---

[5](...continued)
extension of the restrictions might last.  Many alleged violations of the non-compete provisions appear to have no discernible temporal scope.  For example, if Hanson solicited business from a Loparex customer after joining Mondi, it is difficult, if not impossible, to conclude that such a violation would extend beyond the instant of the solicitation.  Likewise, if he had sought to hire a Loparex employee, it is similarly difficult to measure the "duration" of that breach.  In any event, Loparex offers no explanation of how such a provision could operate to extend the non-compete provisions to the present, much less indefinitely.  And any such open-ended, indefinite term of a post-employment restriction would almost surely be deemed invalid as an excessive restraint.

solicitation clauses was difficult to understand, such that "a former employee cannot tell from the terms of his or her contract how long the extension will be for particular conduct in violation of the clauses." Id. In addition, the likelihood of legitimate disputes as to whether particular conduct violates the clauses, disputes that would require judicial resolution, renders "the duration of the restraint not a fixed and definite time period but a time period that is contingent upon outcomes the employee cannot predict." Id.

Accordingly, the court concluded that the "extension provision in both the noncompetition and nonsolicitation clauses is unreasonable and renders the two-year time period in each clause unreasonable." Id. at 428. Moreover, in light of the statutory prohibition against a court selectively excising offending provisions of an employment agreement, the court further concluded that "[b]ecause this restraint in each clause is unreasonable, each clause is void and unenforceable even if each is otherwise reasonable." Id.[6]

---

[6]      In its January 20, 2010 Order, the Court recognized that Wisconsin does not permit a court to "blue-pencil" non-compete agreements and thereby separate and salvage the valid clauses of a non-compete agreement. (Doc. No. 171, at 7-9, 13.) Rather, "Wisconsin law provides that a covenant not to compete will be considered completely void if any part of the covenant is unreasonable. Wis. Stat. § 103.465; Beilfuss v. Huffy Corp., 685 N.W.2d 373, 377 (Wis. Ct. App. 2004)." (Id. at 7.) Here, this Court notes that the purported "extension provision" is located at the end of Section III.5, which addresses judicial construction of the scope and extent of Hanson's covenants, rather than in Section III.4, which contains the various covenants as well as the twenty-four month term of such restrictions. In addition, the employment agreement also purports to provide that "[t]he invalidity or unenforceability of any provision or provisions of this Agreement shall not affect the validity or enforceability of any other provision hereof, which shall remain in full force and effect." (Doc. No. 53, § VIII.) But the mere location of the extension provision within the overall contract cannot operate to protect it. And as the court in Beilfuss plainly ruled, a "severability clause does not provide a safety net" by which the

(continued...)

Thus, here, as in <u>H&R Block</u>, any breach of contract claim based on such restrictive covenants must fail as a matter of law.  <u>Id.</u> (granting summary judgment to employees).[7]  For the same reasons, any claim for tortious interference with the contract also fails, at least insofar as it is premised on the invalidated restrictive covenants of the employment contract.  <u>Id.</u>

But even assuming that these two provisions are valid, they are of no consequence here because Hanson did not violate either of the non-compete provisions at issue here or Loparex cannot establish any resulting injury.  Loparex claims that Hanson breached the customer clause through his "multiple substantive business contacts" with 3M by, for example, informing a Mondi official that he heard from a "person at 3M" that Mondi was looking to sell a particular division of its business.  (Doc. No. 411, at 11; Doc. No. 12.)

---

[6](...continued)
rest of the restrictive covenant may be salvaged.  685 N.W.2d at 378.

[7]	This Court recognizes that the Supreme Court of Wisconsin ruled in <u>Star Direct, Inc. v. Dal Pra</u> that, under the particular terms of the employment contract at issue there, the unenforceability of the business clause did not require invalidation of the otherwise enforceable customer clause and confidentiality clause.  767 N.W.2d 898, 916-17 (Wis. 2009).  The court explained that whether one provision of an employment agreement was divisible from another turns on the "fact-intensive" and "totality of the circumstances" analysis of "whether, if the unreasonable portion is stricken, the other provision or provisions may be understood and independently enforced."  <u>Id.</u> at 916 ("Restrictive covenants are divisible when the contract contains different covenants supporting different interests that can be independently read and enforced.").  Here, it is perhaps possible to construe the extension provision as divisible from the underlying twenty-four month term of the non-compete provisions in that the twenty-four month period could still be applied intelligibly even if a court invalidated the extension provision.  But <u>H&R Block</u> is directly on point, and the Supreme Court of Wisconsin not only denied direct review of that decision, but also, less than two years later in its <u>Star Direct</u> opinion, did not even mention, much less question the continuing validity of, the court of appeals' decision in <u>H&R Block</u>.

But the customer clause purports to prohibit Hanson from "solicit[ing] business from or perform[ing] services for, or for the benefit of, any customer of [Loparex]."  Although 3M was plainly a major customer of Loparex, this disclosure does not constitute the solicitation of business for 3M.

Loparex claims that "Hanson repeatedly contacted Loparex customers."  (Doc. No. 429, at 6-10.)  But Loparex admits that it was unable to identify any damages for lost profits and damage to goodwill attributable to Hanson's contacts with Loparex's customers and suppliers.  (Doc. No. 407, Ex. D ("It's undetermined right now.").)  Loparex could not identify any sales that were lost as a result of Hanson's actions.  (Id. ("The answer is still no.").)  Nor can it specify the damage to Loparex's goodwill as a result of Hanson's alleged misconduct.  (Id. ("At present there's no dollar value that has been established.").)

Loparex further contends that Hanson violated the employee solicitation clause by recommending Steve Odders for a position at Mondi and another Loparex employee, Gerald Kerber, to Mondi.  But again, Loparex clarified that it was not making a claim for damages regarding Hanson's having advised Mondi that Gerald Kerber, a Loparex employee, was available for Mondi's recruitment.  (Id.)  Loparex likewise acknowledges that it was not claiming any injury as a result of Hanson informing Mondi that another of Loparex's salespeople, Mark Comansolli, was leaving.  (Id.)

In sum, Loparex's motion must be denied with respect to its counter-claim for breach of contract.  The covenants are unenforceable as a matter of law.  And, in any

event, because Hanson has shown that Loparex has not produced any evidence of damages, Loparex has the burden of identifying any outstanding factual dispute that could warrant a trial on its breach-of-contract claim, but has established no such dispute. Accordingly, on this record it is clear that Hanson is entitled to summary judgment.

### 2.    Breach of Fiduciary Duty

Loparex first claims that Hanson breached his duties by sending "messages to Loparex financiers" questioning the "representations Loparex executives made to secure the financing of the Douglas-Hanson purchase," and denigrating Loparex management. (Doc. No. 411, at 15.)  Loparex also asserts that Hanson "repeatedly divulged confidential Loparex information to Mondi" after he was "reassigned" to work "special projects" from his home.  (Id. at 16.)  Finally, Loparex contends Hanson solicited Loparex employees to work for Mondi, and divulged confidential information regarding one of Loparex's customers and regarding Loparex's plans to move its headquarters.  (Id.)[8]

With respect to Hanson's communications with the banks that financed Loparex's purchase of Douglas-Hanson, Loparex has since withdrawn its claim that Hanson's emails caused the audit those banks had Ernst & Young perform.  (Doc. No. 460.)[9]

---

[8]     Loparex's Second Amended Answer added a counterclaim alleging that Hanson breached his fiduciary duty to Loparex, as established by his employment agreement with Loparex, by engaging in four categories of allegedly-improper actions and statements, including that Hanson disparaged Loparex employees, misappropriated confidential information, and solicited Loparex employees for Mondi.  (Doc. No. 183, at 10-11.)  These same four categories of alleged misconduct also form the basis of Loparex's tortious interference with contract counterclaim.  (Id. at 7-8.)

[9]     Loparex notified the Court of its decision to withdraw this particular claim
(continued...)

Loparex had sought to recover damages for the costs it incurred in terms of the "audit expenses and litigation costs." (Id. at 16.)  Accordingly, the Court need not address summary judgment with respect to this aspect of Loparex's counterclaims.

Nevertheless, there remains a broader deficiency of any evidence of damages in general, an issue the Court has addressed in previous orders.  In 2009, Hanson inquired as to the damages Loparex was claiming with respect to the various counterclaims it had asserted as of that time.  (See Doc. No. 37-1, Interrogatory No. 2.)[10]  Loparex identified only damages "in excess of $350,000 to pay another employee to perform certain of the duties Jon Hanson was to perform" (apart from damages "in excess of $100,000 responding to the baseless and defamatory allegations Mr. Hanson made to the Defendants' U.S. and European finance teams").  (Id. at 7.)  On August 21, 2009, the Court granted Hanson's motion to compel, directing Loparex to respond to Hanson's discovery requests on this issue.  (Doc. No. 56.)  On October 9, 2009, the Court again ordered Loparex to produce the requested discovery.  (Doc. No. 107.)

Unsatisfied with Loparex's response, Hanson moved for sanctions, or alternatively, for an order "to compel discovery with respect to defendants' damage

---

[9](...continued)
by letter dated April 29, 2011, after all of the summary judgment briefing, as well as the briefing on Hanson's motion for Rule 11 sanctions, had been completed, and following the April 18, 2011 hearing on that sanctions motion but before the May 2, 2011 oral argument regarding summary judgment.

[10]    At the time, Loparex had asserted only five counterclaims against Hanson: (1) tortious interference with contract, (2) tortious interference with prospective business relationships or contract, (3) breach of contract, (4) breach of fiduciary duty, and (5) unfair competition.  (Doc. No. 16.)

claims." (Doc. Nos. 176, 192.)[11]  Hanson explained that Loparex's supplemental

response essentially only increased the claim for Hanson's failure to perform to

"approximately $427,000" (and merely reiterated its claim for approximately $100,000

for damages related to responding to Hanson's statements to Loparex's banks). (See Doc.

No. 195-1, at 3-4.)[12]

---

[11]       Hanson filed its first motion on February 18, 2010, just before Hanson and
Loparex reached a tentative settlement agreement. (Mondi had been dismissed in October
2009.)  In early June 2010, however, the Court permitted the action to be reopened and
Mondi to again be named as a third-party defendant. Accordingly, Loparex filed its
Second Amended Answer–which added three more counterclaims, including one for
misappropriation of confidential information, and four more third-party claims. Hanson
then reiterated its motion on June 24, 2010. (Doc. No. 192.)

[12]       On February 15, 2010, just before the tentative settlement was reached, Jack
Taylor, Loparex's Chief Operating Officer at the time and previously its President and
Chief Executive Officer, testified that Loparex was not claiming any lost sales as a result
of statements about Loparex that Hanson made to Mondi personnel. (Doc. No. 407, Ex.
D.)  Nor was Loparex claiming any injury as a result of Hanson informing Mondi that one
of Loparex's salespeople, Mark Comansolli, was leaving. (Id.)  Likewise, Taylor
clarified that Loparex was not making a claim for damages regarding Hanson having
advised Mondi that Gerald Kerber, a Loparex employee, was available for Mondi's
recruitment. (Id.)  Although in his November 2009 Affidavit Taylor enumerated four
categories of wrongdoing by Hanson (Doc. No. 149, ¶ 25), Taylor testified that there
were "[n]o damages to date" with respect to any of those categories and that "[a]s of this
moment there are no damages that can be listed." (Doc. No. 407, Ex. D.)  Likewise, with
respect to Loparex's basis for its claim of tortious interference with contract, Taylor was
unable to identify any damages for lost profits and damage to goodwill attributable to
Hanson's contacts with Loparex's customers and suppliers. (Doc. No. 446, Ex. A ("It's
undetermined right now.").)  He could not identify any sales that were lost as a result of
Hanson's actions. (Id. ("The answer is still no.").)  Nor could he specify the damage to
Loparex's goodwill as a result of Hanson's alleged misconduct. (Id. ("At present there's
no dollar value that has been established.").)  And although Taylor claimed that Loparex
employees had to spend "extensive" time to shore up the confidence of Loparex's
customers in response to Hanson's actions, he testified nobody kept track of that time.
(Id.)  Taylor also testified that he was unaware of any sales, profits or customers that
Loparex lost as a result of Hanson's actions. (Doc. No. 407, Ex. D ("I don't think we've

(continued...)

20

On August 2, 2010, the Court expressly acknowledged "Hanson's frustrations with the difficulties" he encountered in obtaining satisfactory discovery responses from Loparex.  (Doc. No. 203, at 5.)  With respect to Loparex's claimed damages on its counterclaims, the Court again ordered Loparex to provide evidentiary support for its damages claims (particularly with respect to the Ernst & Young audit).  (Id.)

On August 12, 2010, Loparex responded to Hanson's second set of interrogatories. In part, Hanson had sought the factual basis for Loparex's damage claims with respect to its new counterclaim for misappropriation of confidential information.  Loparex again reiterated its claim for $427,000 regarding Hanson's alleged failure to perform under his employment agreement, and added several new claims for damages (as well as repeating its claim for $100,000 related to responding to Hanson's statements to Loparex's banks). (Doc. No. 407, Ex. A.)  Loparex now also sought "damages for lost profits and damage to goodwill attributable to" Hanson's contacts with Loparex's key customers and suppliers, but asserted that the amount of such damages would be "finally established by expert testimony."  (Id.)  Loparex also sought damages "arising from its defense of this suit," contending that "it was undertaken as the product of an unlawful conspiracy" between Hanson and the law firm of Briggs and Morgan.  (Id.)[13]  Finally, Loparex separately seeks damages for Hanson having retained the law firm of Briggs and Morgan, and thereby

---

[12](...continued)
lost any customers.").)  No evidence of such damages has been ever produced.

[13]      Loparex has failed, however, to provide evidence of any such conspiracy. See infra § II.B.8.

21

gaining access to confidential documents relevant to the present dispute.  (Id.)[14]

Still unsatisfied with Loparex's response, Hanson moved for sanctions on October 4, 2010.  (Doc. No. 225.)  Hanson's counsel noted that "[s]ince the Court's August 2, 2010 Order compelling discovery, Loparex has not provided any further documentation or information concerning its alleged damage claim arising from the alleged disparaging statements made by Jon Hanson to Loparex's European banks."  (Doc. No. 228.)  On October 18, 2010, this Court again ordered Loparex to (1) "provide a full and complete response to Plaintiff's Interrogatory No. 2 and produce all documents evidencing, reflecting or otherwise relating to [Loparex's] damage claim," (2) produce a qualified Rule 30(b)(6) representative for deposition on Loparex's damage claims, and (3) produce a qualified Rule 30(b)(6) representative of Ernst & Young for deposition "regarding its 2009 audit of Loparex, including, without limitation, when the audit commenced, whether Jon Hanson's statements to Danske Bank in any manner affected the nature or scope of the audit, and if so, a description of how the audit was affected and the additional costs that resulted."  (Doc. No. 249.)

At the hearing on that motion, Hanson's counsel summarized his unsuccessful efforts to obtain from Loparex an explanation of its claims for damages.  (Doc. No. 288, at 22-28.)  The Court emphasized to Loparex that if the discovery is "not produced completely and totally in seven days, you don't have a basis for your claim."  (Id. at 30.)

---

[14]     But Loparex fails to establish that Briggs and Morgan's present representation of Hanson somehow provided Hanson with any of Loparex's confidential information.  See infra § II.B.6.

In an effort to ensure that Loparex understood, the Court reiterated: "Seven days or there is no claim." (Id.)

Since then, Loparex has failed to produce evidence to support its damage claims.[15] Loparex's Rule 30(b)(6) corporate designee, James Miksta, a senior vice-president of research and development and formerly a senior vice-president of sales and marketing, testified on November 30, 2010, that he was unable to identify what damages Loparex is seeking from Hanson with respect to lost sales. (Doc. No. 407, Ex. B.)[16] With respect to Loparex's claim for tortious interference with contract, which was based on four specified allegations of Hanson's misconduct, including his having made disparaging comments about Loparex agents and employees, Miksta testified that he was unable to identify damages (other than those for the Ernst & Young audit, a claim Loparex finally withdrew). (Id.)[17] With respect to Loparex's allegations that Hanson misused confidential information, Miksta could only state that Loparex was "potentially" contending damages were incurred and could not identify any particular amount of

---

[15]    The Court notes that the issue of whether Loparex has produced any evidence to substantiate its damages claims goes beyond its allegation that Hanson breached his fiduciary duties and pertains to most, if not all, of Loparex's counterclaims and third-party claims.

[16]    Similarly, Michael Apperson, Loparex's Chief Executive Officer, testified that while he thinks Loparex lost sales as a result of Hanson's statements to customers, Apperson can identify neither specific customers nor specific dollar amounts of such alleged lost sales. (Doc. No. 409, Ex. G.)

[17]    Loparex identifies the same four categories of misconduct as the basis for its claim for Hanson's breach of his fiduciary duty to Loparex. (Doc. No. 183, at 8-9, 11-12.)

damages.  (Id. ("Today, I can't make a specific claim.  There may be something in the future.").)  Nor could Miksta identify any particular lost sales with respect to customers of Loparex at the time Hanson went to work for Mondi or with respect to any potential customers.  (Id.)[18]

And yet, Loparex has sought summary judgment in its favor on all of its counterclaims and third-party claims.  But in reply to Hanson and Mondi's opposition, Loparex all but expressly concedes that it incurred no injury from any of the alleged wrongdoing.  Loparex devotes its reply regarding damages to the argument that it is entitled to attorneys fees.  (Doc. No. 437, at 2-4.)[19]

With respect to Loparex's remaining allegations in support of its counterclaim for breach of fiduciary duty, Loparex confines its claim to the argument that Hanson

---

[18]	Likewise, Miksta was unable to identify any damages Loparex incurred as a result of any actions by Mondi.  (Doc. No. 409, Ex. C.)

[19]	The Court rejects Loparex's argument regarding attorney fees.  The theory on which Loparex relies, "the rule of Weinhagen v. Hayes," 190 N.W. 1002 (Wis. 1922), is a narrow exception to the general "'American Rule'" that "each party is responsible for his or her own attorney fees."  Hall v. Gregory A. Liebovich Living Trust, 731 N.W.2d 649, 654 (Wis. App. 2007).  Accord City of Cedarburg Light & Water Comm'n v. Glens Falls Ins. Co., 166 N.W.2d 165, 167 (Wis. 1969).  Moreover, the exception applies only where the wrongful acts of a party's opponent have involved that party in litigation with a third party.  Hall, 731 N.W.2d at 654.  For example, in certain circumstances an insured might be able to recover from its insurer the attorney fees it expended pursuing a wrongdoer where the insurer had denied coverage, forcing the insured itself to pursue the third-party wrongdoer in a separate action.  City of Cedarburg, 166 N.W.2d at 167.  Loparex fails to even identify any separate litigation with another party, much less that Hanson's or Mondi's wrongful acts caused Loparex to incur legal fees in such litigation.  The remainder of Loparex's brief reply is devoted to the admissibility of Loparex's evidence and the disclosure of the new basis for its claim of tortious interference with a prospective business relationship.  (Doc. No. 437, at 4-8.)

"divulged confidential information to Mondi." (Doc. No. 411, at 16.) But as the Court already has ruled, the confidentiality clause is unenforceable and the disclosures at issue here do not fall within the ambit of "Confidential Information" under the agreement.

Thus, the Court must deny Loparex's motion for summary judgment with respect to its breach of fiduciary duty counterclaim. In addition, on this record Hanson is entitled to summary judgment because Loparex has failed to produce evidence of any damage it incurred and it is clear as a matter of law that Hanson is entitled to judgment.

### 3.      Misappropriation of Confidential Information

Loparex claims that Hanson "misappropriated three key pieces of Loparex information to Mondi: the departure of Mark Comansolli from Loparex, the move of Loparex's headquarters from Illinois to North Carolina, and 3M's plans to implement internal extruder capabilities." (Doc. No. 411, at 31.)[20] Loparex recognizes that Hanson's purported duty to maintain the confidentiality of such information is premised on the confidentiality clause of the employment agreement. (Id.)[21]

---

[20]      Loparex's misappropriation of confidential information counterclaim originally alleged that "[i]n the course of his employment with Loparex," Hanson "was bound not to use or disclose [Loparex's] confidential information," but "revealed Loparex's confidential information to Mondi." (Doc. No. 183, at 11.) Loparex asserts a separate counterclaim for misappropriation even though, as it freely acknowledges, the evidence that it contends supports such a claim is the same "evidence supporting Loparex's breach of contract–non-compete and breach of fiduciary duty claims." (Doc. No. 411, at 30.)

[21]      There is no dispute that a common-law claim for misappropriation of confidential information remains valid despite Wisconsin's enactment of the Uniform Trade Secrets Act, as long as the common-law claim is not based on the misappropriation of a "trade secret" as defined under that statute. Wis. Stat. § 134.90(6)(b)2; Burbank

(continued...)

This Court, however, already has ruled that the confidentiality clause is invalid and unenforceable for purporting to extend indefinitely.  In any event, the disclosures at issue all concern information that is not confidential under that agreement.  The departure of Mark Comansolli–although perhaps information of a "sensitive" nature–is not "Confidential Information."[22]  Likewise, the news of Loparex moving its headquarters–although *Mondi* felt such information should be protected until the move was completed–does not fall within Loparex's definition of confidential information. And this Court already has ruled that 3M's plans to implement its own extruder capabilities was not Loparex's confidential information regardless of whether Hanson personally thought it "well worth the money" for Mondi.  (Doc. No. 317.)  Finally, Loparex contends that the fact that some Loparex executives were not aware of 3M's plans "established its confidential nature and gave rise to Hanson's duty" to not disclose it.  (Doc. No. 411, at 32.)  But the employment agreement's definition of "Confidential Information," not the lack of awareness of it by Loparex officers, establishes what is

---

[21](...continued)
Grease Services, LLC v. Sokolowski, 717 N.W.2d 781, 793-94 (Wis. 2006) ("[A]ny civil tort claim not grounded in a trade secret, *as defined in the statute*, remains available to [a plaintiff]." (emphasis in original)).  Loparex is not claiming disclosure of any trade secrets here.  But where Loparex also has asserted a claim for breach of a contractual confidentiality covenant and for breach of a fiduciary duty–and not only acknowledges that the same evidence purportedly supports all three claims but also contends that Hanson's duty is premised on "Hanson's employment agreement" (Doc. No. 411, at 30-31)–its common-law claim for misappropriation of confidential information would appear to rise or fall along with its breach of contract claim regarding the confidentiality covenant and its claim for breach of fiduciary duty.

[22]     See supra § II.B.1(A) (addressing definition).

confidential.

Loparex's motion for summary judgment with respect to its counterclaim for misappropriation of confidential information must therefore be denied.  In addition, because there are no outstanding genuine issues of material fact that could warrant a trial on this claim, Hanson is entitled to summary judgment on this counterclaim.

### 4.    Unfair Competition

Loparex asserts against both Hanson and Mondi a common-law claim for unfair competition.  (Doc. No. 411, at 33-34 & n.6.)[23]  Loparex claims that Hanson, after being

---

[23]    Wisconsin has enacted an unfair competition statute, but it does not appear to address the claim that Loparex attempts to pursue here.  See Wis. Stat. § 100.20 (prohibiting specified "[u]nfair methods of competition" and "unfair trade practices").  Rather, Loparex premises its claim for "unfair competition" on Mercury Record Productions, Inc. v. Economic Consultants, Inc., 218 N.W.2d 705 (Wis. 1974).  Loparex contends that the "elements of a claim for unfair competition" include

> "the defendant's use of the plaintiff's product, into which the plaintiff has put time, skill, and money; and the defendant's use of the plaintiff's product or a copy of it in competition with the plaintiff and gaining an advantage in that competition because the plaintiff, and not the defendant, has expended the energy to produce it."

(Doc. No. 411, at 34 (quoting Mercury Record Productions, Inc., 218 N.W.2d at 710).) There, however, the court explained that such elements were "the essence of the cause of action in misappropriation."  Mercury Record Productions, Inc., 218 N.W.2d at 710 (emphasis added).  As discussed above, Loparex has asserted a separate claim for misappropriation of confidential information.  In Mercury Record Productions, the court explained how the claim for unfair competition, which originally involved passing off another's product as one's own, evolved to also include two additional causes of action, "'causes of action based upon the misappropriation and the exploitation of a competitor's business values.'"  Id. at 709.  The court explained that the elements of the new misappropriation claim involved a competitor's appropriation of another's product, or a copy of it, into which it has invested time, skill and money.  Here, the claim apparently is not that Hanson wrongfully took any product of Loparex's when he joined Mondi, but

(continued...)

"reassigned" to "special projects" and being directed not to have any contact with Loparex customers, nevertheless "continued to maintain contact with 3M."  (Id. at 35.)[24] Loparex thus argues that "Hanson unfairly competed against Loparex" based on "Loparex's investment in Hanson and Hanson's employment by Mondi."  (Id.)  Loparex contends that it paid Hanson's salary for the remainder of the three-year term of the employment agreement "to remove himself from the release liner industry," only to have Hanson "misuse" "Loparex's investment when he received his full salary but refused to follow Loparex's" directions to stay "out of the release liner industry."  (Id.)  Loparex thus contends that Hanson's improper maintenance of his contacts within that industry allowed him to "quickly re-establish himself as a top salesman in the release liner market when he began working for Mondi."  (Id.)[25]

---

[23](...continued)
that Hanson himself embodied the investment that Loparex claims paid off for Mondi.  In any event, however it is labeled, Loparex's claim that Hanson somehow unfairly competed with Loparex by exploiting its "investment" in him in order to later make sales for Mondi fails because Hanson, in his six weeks at Mondi, was not responsible for any sales.  Moreover, taken to its logical limit, such a claim, insofar as it asserts that whatever intangible skills or abilities an employee acquires while working for one employer, may never be used in service of a subsequent employer, would likely run afoul of Wisconsin's policy of strictly policing restrictive covenants as impermissible restraints of trade.  See Star Direct, Inc. v. Dal Pra, 767 N.W.2d 898, 905 (Wis. 2009).

[24]     Loparex's unfair competition counterclaim originally alleged that Hanson engaged in unfair competition by accepting "employment with a direct competitor of Loparex" and intentionally disclosing Loparex's "confidential information to this competitor."  (Doc. No. 183, at 12.)  Loparex further alleged that Hanson engaged in unfair competition by, in essence, engaging in the actions supporting all of the other counterclaims (apart from the conspiracy claim).  (Id. at 12-13.)

[25]     The third-party claim against Mondi follows similar lines.  Loparex alleges (continued...)

But this theory of Loparex's claim of unfair competition founders, at a minimum,

on a false premise.  Contrary to Loparex's assertion that "Mondi documents show Hanson

making millions of dollars in sales for Mondi" (id.), this Court already has ruled that

Loparex has no evidence that Hanson ever made any sales during his brief tenure at

Mondi.  (Doc. No. 459.)

Accordingly, the Court denies Loparex's motion for summary judgment on this

claim of unfair competition.  Moreover, on this record there is no basis to proceed to trial,

such that the Court grants Hanson's and Mondi's motions for summary judgment with

respect to the unfair competition claim.

### 5.    Tortious Interference with Contract

Loparex claims that Hanson and Mondi each interfered with Loparex's contractual

relationships, but the particular claims differ in terms of their respective basis.

---

[25](...continued)
Mondi unfairly competed against Loparex by employing "Hanson to make millions of
dollars for Mondi release liner sales."  (Doc. No. 411, at 36-37.)  The essence of
Loparex's claim is that it "invested" in Hanson, only to have that investment and its
"competitive advantage" pay off for Mondi when Hanson allegedly made substantial
sales for Mondi:

> Mondi fully enjoyed the benefits of the millions of dollars in release liner
> sales that Hanson made for Mondi.  These sales are directly attributed to the
> connections Hanson maintained and information he disclosed, all against
> Loparex's instructions while Hanson remained an employee of Loparex.

(Doc. No. 411, at 37.)  But this Court already has ruled that Loparex has produced no
competent evidence that Hanson made any sales for Mondi in his brief tenure at the
company.  (Doc. No. 459.)  Loparex also premises its unfair competition claim against
Mondi on the allegations that, for example, "Mondi continuously solicited release liner
information from Hanson and learned of 3M's plans to install extruder equipment."  (Id.)
The Court already has addressed these allegations with respect to Loparex's other claims.

### (A)    The Third-Party Claim Against Mondi

With respect to Loparex's third-party claim against Mondi, Loparex claims Mondi interfered with Loparex's employment agreement, which "prohibited Hanson from disclosing confidential information and soliciting employees or former employees within six months of their departure from Loparex." (Doc. No. 411, at 20.) Loparex first asserts Mondi interfered "by soliciting and accepting confidential information." (Id. at 21.)[26] Loparex contends Hanson disclosed the departure or other availability of several Loparex employees, that "Hanson disclosed the move of Loparex's headquarters," and that Hanson "disclosed valuable 3M extruder information to Mondi." (Id. at 21-22.)

Loparex contends that Mondi's "interference" was intentional because Mondi knew of Hanson's agreement with Loparex (Hanson having provided Mondi with a copy of it), but mere knowledge of the restrictive covenants does not amount to intentional interference. Loparex also relies on the inquiry by a Mondi executive "whether there was 'any news regarding [Hanson's] legal situation." (Id.) But such a question does not constitute intentional interference. And as a prospective employer of Hanson, Mondi was simply exercising legal prudence in reviewing any continuing obligations Hanson might have had to Loparex.[27]

---

[26]    Loparex originally alleged that Mondi "intentionally procured Jon Hanson's breach of his noncompete with Loparex." (Doc. No. 183, at 17.)

[27]    Finally, Loparex's argument that Mondi profited from the information it obtained from Hanson because Hanson made sales for Mondi to Avery-Dennison, one of Loparex's customers, between January and July 2009, is meritless. The Court already has ruled that Loparex lacks any evidence that Hanson made sales for Mondi before he

(continued...)

In any event, Loparex's claim must fail as a matter of law because the contractual provisions with which it claims Mondi interferes–the confidentiality clause and the employee solicitation clause–are unenforceable.  See supra § II.B.1.  The Court thus must deny Loparex's motion for summary judgment.  And because Loparex has failed to identify any outstanding fact issue for trial, the Court also grants Mondi's motion for summary judgment on this third-party claim.

### (B)   The Counterclaim Against Hanson

With respect to Hanson, Loparex alleges that Jon Hanson interfered with Loparex's contract with Chris Hanson, Jon's father, regarding the sale of Douglas-Hanson to Loparex because "Hanson's e-mails to Loparex investors" undermined "the financial representations guaranteed by that agreement."  (Doc. No. 411, at 17-18.)[28]

The problem with Loparex's argument is that the allegedly-interfering statements by Hanson occurred *after* the sale of Douglas-Hanson closed.  (Doc. No. 412-3, Ex. C.) The Stock Purchase Agreement between Loparex and Chris Hanson was entered into in mid-2006.[29]  Loparex has not demonstrated how any statements or actions by Hanson

---

[27](...continued)
"officially" started working for Mondi in August 2009.  (Doc. No. 459.)

[28]     Loparex's counterclaim originally alleged that Hanson intentionally disregarded the "obligations, covenants and warranties" of the Stock Purchase Agreement between his father's company and Loparex by engaging in the four specified categories of misconduct that also form the basis for Loparex's breach of fiduciary duty counterclaim. (Doc. No. 183, at 7-8, 10-11.)

[29]     Although the signature page of the copy Loparex provided to the Court does not reflect the date of execution, the contract states that it "is made as of June 21, 2006."

(continued...)

after the closing could interfere with that contract for sale once both parties had fully performed their obligations under it.  In fact, Loparex highlights the problem when it recites a January 25, 2007 e-mail from Hanson stating that "'I wish we would not have sold [Douglas-Hanson] to Loparex.'"  (Doc. No. 411, at 19.)

Loparex also claims that "Hanson interfered with [Chris Hanson's sales agreement with Loparex] through his breach of the implied duty of good faith and fair dealing with respect to the required employment contract between him and Loparex."  (Id. at 19.)  But again, any breach of his employment agreement with Loparex would have occurred, by definition, only after the sale of Douglas-Hanson to Loparex closed.

With respect to damages for this claim, Loparex claimed Hanson's interference "forced Loparex to undergo an audit by Ernst & Young OY to clear Loparex of any financial improprieties."  (Doc. No. 411, at 20.)  But as noted above, Loparex has since withdrawn its claim regarding the audit.

Accordingly, the Court denies Loparex's motion.  Furthermore, in the absence of any genuine issue of material fact, the Court grants summary judgment to Hanson with respect to Loparex's counterclaim for tortious interference with contract.

---

[29](...continued)
(Doc. No. 413-1.)  Jack Taylor, the Loparex officer that signed on behalf of Loparex, states that the agreement was executed on June 30, 2006.  (Doc. No. 413, ¶ 5.)  (Loparex has moved for leave to submit a notarized signature page for the Affidavit of Jack Taylor. (Doc. No. 415.)  The Court grants the motion.)  In any event, the agreement provides that the "closing of the transaction contemplated by this Agreement . . . shall take place on the later of June 30, 2006 and" a date "no later than July 14, 2006."  (Doc. No. 413-1, § 1.3(a).)

### 6.    Tortious Interference with a Prospective Business Relationship or Contract

Loparex now claims that Hanson and Mondi improperly interfered with Loparex's purported prospective relationship with the law firm of Briggs and Morgan, P.A.  (Doc. No. 411, at 26.)[30]  Loparex argues that "[b]y wrongfully relying on Loparex documents to obtain a partial summary judgment order, obtained only through Briggs and Morgan's prior representation of Loparex, Hanson destroyed any future relationship between Loparex and its former counsel."  (Id.)

Loparex's theory is that because Briggs & Morgan had represented Douglas-Hanson, the business owned by Hanson's father before he sold it to Loparex, Loparex somehow had a reasonable expectation of being Briggs and Morgan's client after Loparex acquired Douglas-Hanson.  "Thus, [according to Loparex], Loparex is a former client of Briggs and Morgan."  (Id.)  Loparex contends that Hanson, "supported by Mondi," interfered with its purported future relationship with Briggs and Morgan because the firm then represented Hanson after the purchase of his father's company, and continues to represent Hanson in the present action to this day.

---

[30]    Loparex originally alleged that Hanson "has harmed the prospective business relationships arising from the Stock Purchase Agreement including . . . beneficial relationships with critical customers of Loparex . . ., and relations with financial institutions critical to the continued success of Loparex's operation."  (Doc. No. 183, at 8.)  Loparex alleged that Mondi harmed Loparex's prospective relationships "[b]y utilizing confidential proprietary information illegally obtained from" Hanson.  (Id. at 18.)  Hanson thus now contends that Loparex has abandoned its original and only theory supporting such a claim in favor of the above argument.  But the Court need not decide whether Loparex is bound by its original allegations, because the Court disposes of the present claim on the merits.

Under the Stock Purchase Agreement, Loparex USA Holding Inc. acquired all of the "Acquired Stock" of Douglas-Hanson in mid-2006. (Doc. No. 413-1, at 2.) Loparex USA Holding Inc. then became the parent corporation of both Loparex Inc. and Douglas-Hanson. (Doc. No. 32-1, at 5.) In December 2006, Loparex USA Holding Inc., which also owned 100% of the outstanding membership units of Loparex LLC, a limited liability company, then merged the two wholly-owned subsidiary entities "into the LLC, with the LLC being the surviving entity of such merger." (Id.) The acquisition of Douglas-Hanson itself thus does not reflect that Briggs and Morgan continued to represent Douglas-Hanson after its acquisition by Loparex USA Holding Inc., much less after it was merged with Loparex Inc. and folded into Loparex LLC, or even that any of those entities wished to continue Briggs and Morgan's representation of Douglas-Hanson.

The Court previously denied Loparex's motion to disqualify Briggs and Morgan as Hanson's counsel on the grounds of a conflict of interest. (Doc. No. 72.) The Court observed that upon a corporation's merger with, or acquisition of, another corporation, the acquired corporation's legal counsel does not necessarily become the successor's counsel. (Id. at 5.) The Court then noted that "[t]here is little evidence currently before the Court . . . for it to conclude that Loparex is the 'former client' of Briggs & Morgan, other than the fact that Loparex is the surviving entity post-merger." (Id.) The Court addressed the argument that "Loparex, as the successor to Douglas-Hanson, is a 'former client' of Briggs and Morgan," but did not need to definitively resolve that question because "[e]ven if the stock acquisition transformed Loparex into Briggs & Morgan's

'former client,'" disqualification was not warranted based on the "current alignment of interests." (Id. at 5-8 (explaining that "the interest of Briggs & Morgan's former clients, Douglas-Hanson and Chris Hanson, are aligned with Briggs & Morgan's current client, Jon Hanson, and their interests are in opposition to Loparex").)  In short, Hanson's retention of Briggs and Morgan for the present litigation is not inconsistent with that firm's representation of his father's sale of his business to Loparex, an arms-length transaction in which Loparex was represented by counsel other than Briggs and Morgan. Accordingly, Loparex cannot contend that it, by acquiring Douglas-Hanson, was a former client of the acquired company's law firm.

Loparex now offers no new evidence that it is a "former client" of Briggs and Morgan, for example, that it approached that law firm about representation after the merger.  In light of the history of the acquisition, the fact that Loparex offers no additional evidence that it is a "former client" of Briggs and Morgan, and no explanation of why Loparex could not retain Briggs and Morgan in the future despite its representation of Hanson by waiving any conflict, the Court concludes as a matter of law that Loparex may not base a claim for interference with a prospective business relationship on its purported status as a "former client" of Briggs and Morgan that wished to continue that relationship, but that Hanson's actions precluded any such representation.

In sum, Loparex has failed to show that it is entitled to summary judgment on this claim.  And because there are no genuine issues of material fact on which Loparex could proceed to trial, Hanson and Mondi are entitled to summary judgment.

### 7.    Fraudulent Omissions, Concealment, Destruction, and Misrepresentation

Loparex claims that Hanson and Mondi fraudulently omitted, concealed, destroyed and misrepresented material facts.  (Doc. No. 411, at 37-38.)  Loparex purports to premise these allegations, unlike its other claims, on Minnesota law "because the acts that form the basis of these claims all occurred in Minnesota."  (Id. at 38 n.7.)  Loparex contends that Hanson and Mondi engaged in a plethora of discovery abuses, such as wrongfully denying that he "had repeated, significant and substantive business contacts with Loparex customers."  (Id. at 38-44.)  In short, Loparex argues that this claim arises out of Hanson's and Mondi's conduct during this litigation in the District of Minnesota, although the allegedly-improper actions on which it is based, such as Hanson's reformatting of his computer, occurred largely in Wisconsin, or with respect to Mondi's actions, largely if not entirely outside of Minnesota (for example, in Europe).

In essence, Loparex seeks damages for discovery abuse, not as a sanction collateral to the merits of this dispute, but as a substantive claim of its action.  Even assuming that omissions, acts of concealment and acts of destruction would otherwise fall within the confines of a claim for fraudulent misrepresentation, what Loparex alleges in its counterclaim and third-party claim are matters of discovery.  (Doc. No. 183, at 14-16 (alleging that Hanson "deleted and destroyed evidence," falsely swore discovery responses were true and correct, reformatted his computer, "lie[d] in his deposition in this case," and "destroyed other documents"); id. at 20-22 (alleging that Mondi instructed Hanson to lie in his deposition, and that Mondi withheld or destroyed relevant

documents).)

The Court recognizes Loparex is alleging that Hanson's statements that he did not engage in such discovery abuses constitute "misrepresentations," but the proper mechanism for addressing such allegations in this context lies in the Federal Rules of Civil Procedure rather than in a claim for relief in the action in which the alleged discovery abuses occurred.  See, e.g., Fed. R. Civ. P. 37 (providing procedure for addressing discovery abuses); Rogers v. Furlow, 729 F. Supp. 657, 659-60 (D. Minn. 1989) (rejecting argument that violation of federal discovery rules supports an independent cause of action).[31]

Moreover, the Court notes that many of the alleged acts of destruction and misrepresentation fail as a matter of law.  For example, this Court already has denied Loparex's motion to add an additional claim for misappropriation of trade secrets based on Hanson's alleged disclosure to Mondi of 3M's plans to add its own extruder capabilities.  (Doc. No. 317 (explaining that such information would not be Loparex's confidential material).)  Similarly, this Court already has ruled that there is no competent

---

[31]     Loparex bases its claim on the cause of action addressed in Hoyt Properties, Inc. v. Production Resource Group, L.L.C., where the court addressed a conventional claim for fraudulent misrepresentation, which is premised on a false representation of a past or existing material fact susceptible of knowledge. 736 N.W.2d 313 (Minn. 2007). But in Hoyt, the misrepresentation at issue, although occurring within the context of a legal action, did not concern discovery. Instead, the statement occurred during settlement discussions regarding an unlawful detainer action. Moreover, the misrepresentation claim was brought in a separate action seeking to rescind the settlement agreement. This Court does not understand Hoyt to authorize the repackaging of discovery abuses into a separate "misrepresentation" claim incorporated in the very action in which the abuses allegedly occurred.

evidence in the record to support Loparex's claim that Hanson lied in his deposition. (Doc. No. 459.)  Likewise, this Court also has ruled that Loparex has produced no evidence that Hanson made sales for Mondi while still subject to the twenty-four month non-compete provision.  (Id.)  That conclusion also undermines Loparex's allegation regarding delays by Mondi in producing responsive documents purportedly reflecting such sales.  And the Court has rejected Loparex's argument that Hanson intentionally deleted relevant documents from his computer.  (Id.)  Finally, the Court has denied Loparex's motion for relief from the January 20, 2010 Order that Loparex alleges Hanson improperly obtained by engaging in the discovery abuses on which it now attempts to premise a separate claim for "fraudulent omissions, concealment, destruction and misrepresentation."[32]

Loparex's misrepresentation claim also founders in terms of its burden to establish its reliance on such misrepresentations.  Loparex asserts that "these misrepresentations were made with the intent to induce Loparex into litigation."  (Doc. No. 411, at 43.)  But Loparex made no affirmative decision to get involved in this litigation based on any reliance on Hanson's alleged misrepresentations.  As the Defendant in this declaratory judgment action, Loparex's participation is involuntary.  And there is nothing improper, of course, in a former employee seeking declaratory relief regarding the employee's obligations under a non-compete agreement with a former employer, particularly insofar

---

[32]    Finally, the Court notes that Loparex's allegations that Hanson misrepresented the reasons for his departure from Mondi, even if true, are of no discernible relevance to this action.

as the governing law of Wisconsin views such restrictive covenants with suspicion.

Thus, the Court denies Loparex's motion with respect to this claim and, again, grants Hanson's and Mondi's motions because Loparex has identified no outstanding fact issues that could justify a trial on this claim.

### 8.    Civil Conspiracy

Loparex's final claim is that Hanson and Mondi were engaged in a civil conspiracy to accomplish the unlawful objectives reflected in certain of Loparex's other counterclaims and third-party claims.  (Doc. No. 183, at 17, 21.)  As the parties agree, a claim for civil conspiracy requires, *inter alia*, an agreement between the alleged conspirators and that the goal of such an agreement is to achieve an unlawful purpose.

Loparex argues that "Hanson and Mondi undeniably worked together to initiate litigation against Loparex to obtain a declaratory judgment."  (Doc. No. 411, at 46.)  But evidence of the alleged "conspiracy" on which Loparex relies proves nothing of the sort. Even assuming that Hanson and Mondi communicated regarding Hanson's "'legal situation' with Loparex," that they agreed that Mondi would pay for Hanson's legal expenses, that Mondi's attorney evaluated the restrictions of Hanson's employment agreement with Loparex, and that Hanson forwarded the complaint in this action to Mondi, such interactions establish nothing more than the prudence of a prospective employee and his prospective employer in evaluating the propriety of an employment relationship in light of the employee's existing obligations to his former employer.

Loparex also contends that the alleged "conspiracy" achieved "a partial summary

judgment order . . . through unlawful means," by destroying evidence and misrepresenting the facts. (Doc. No. 411, at 46-47.) This Court already has rejected Loparex's motion to modify that order and presently finds no improper, much less conspiratorial, motivation for, or means of, obtaining a legal declaration of Hanson's rights under the employment agreement.

Hanson further notes that any conspiracy claim must fail where there is no illegal objective the alleged conspirators sought to achieve. (Doc. No. 405, at 24.) Because Loparex's conspiracy claim is premised on the allegedly unlawful actions underlying Loparex's other claims–on which this Court has already granted summary judgment to Hanson and Mondi–Loparex's conspiracy claim thus also fails as a matter of law. Accordingly, the Court denies Loparex's motion with respect to this claim. In addition, the Court also must grant Hanson's and Mondi's motions.

### C.    Loparex's Failure To Provide Evidence Of Injury

In sum, Loparex's motion for summary judgment on its counterclaims and third-party claims must be denied for several reasons, but perhaps most importantly, because Loparex–despite repeated opportunities to comply with numerous orders of this court to substantiate its damages claims–wholly fails to provide evidence of any injury as a result of Hanson's and Mondi's actions. Although Loparex seeks damages for the "injury, loss and damage to its business" for most of the counterclaims and third-party claims it asserted, Loparex's failure to produce any supporting evidence of this key element of its

claims is alone sufficient to deny its motions for summary judgment.[33]

While Loparex has asserted eight counterclaims against Hanson (five of which it also asserts as third-party claims against Mondi), the underlying allegations, regardless of how they are packaged in terms of particular causes of action, reduce to the following–each of which, however, is either precluded as a matter of law or, by Loparex's own *admission*, did not cause any resulting injury or damages that Loparex can identify:

- Disparaging statements regarding Loparex employees and agents.  (Doc. No. 183, at 7 (Count I), 10 (Count IV); Doc. No. 407, Ex. A.)

    - but Jack Taylor testified that Loparex was not claiming any lost sales as a result of statements about Loparex that Hanson made to Mondi personnel;

    - Taylor was unable to identify any damages for lost profits and damage to goodwill attributable to Hanson's contacts with Loparex's customers and suppliers;

    - Miksta testified that he was unable to identify damages as a result of Hanson having made disparaging comments about Loparex agents and employees (other than those for the Ernst & Young audit, a claim that Loparex has since withdrawn);

    - and Taylor admitted nobody kept track of the "extensive" time that Loparex employees had to spend to shore up the confidence of Loparex's customers in response to Hanson's statements to Loparex's customers.

- Hanson's actions caused Loparex to lose sales to Mondi.

    - but no one could identify any sales that were lost as a result of

---

[33]     For its breach of contract claim, Loparex's Second Amended Answer seeks injunctive relief, but the thrust of its argument since filing that pleading appears to be that it incurred damages as a result of Hanson's violation of the restrictive covenants.  But regardless of the particular form of relief Loparex seeks with respect to that claim, the Court has ruled that none of the covenants are enforceable.

Hanson's actions;

- nor could Taylor specify the damage to Loparex's goodwill as a result of Hanson's alleged misconduct;

- Miksta testified that he was unable to identify what damages Loparex is seeking from Hanson with respect to lost sales;

- nor could Miksta identify any particular lost sales with respect to customers of Loparex at the time Hanson went to work for Mondi or with respect to any potential customers;

- and Taylor testified that he was unaware of any sales, profits or customers that Loparex lost as a result of Hanson's actions.

• Misconduct during a business trip to China. (Doc. No. 183, at 7 (Count I), 10 (Count IV).)

- but Taylor clarified Loparex was not contending that it was damaged by Hanson's actions in China.

• Failing to perform his contractual obligations under his employment agreement. (Doc. No. 407, Ex. A.)

- but Loparex chose not to terminate Hanson, but rather to keep him on the payroll for strategic reasons because Loparex did not want Hanson working for a competitor.

• Disclosing confidential information. (Doc. No. 183, at 7 (Count I), 10 (Count IV), 11-12 (Count V), 12 (Count VI); Doc. No. 149, ¶ 25(a), (b).)

- but Miksta could only state that Loparex was "potentially" seeking damages and could not identify any particular amount of damages;

- and the Court has concluded as a matter of law that the confidentiality clause is unenforceable.

• Soliciting Loparex employees to work for its competitors. (Doc. No. 183, at 8 (Count I), 10-11 (Count IV); Doc. No. 149, ¶ 25(b), (c).)

- but Taylor stated Loparex was not claiming any injury as a result of Hanson informing Mondi that one of Loparex's salespeople, Mark

Comansolli, was leaving;

- • and Taylor also clarified that Loparex was not making a claim for damages regarding Hanson's having advised Mondi that Gerald Kerber, a Loparex employee, was available for Mondi's recruitment.

● Interfering with Loparex's prospective business relationships.  (Doc. No. 183, at 8-9 (Count II); (Doc. No. 407, Ex. A (relationship with Briggs and Morgan.).)

- • but the Court has concluded as a matter of law that Loparex has not established that it was a former client of Briggs and Morgan or that Hanson's actions preclude any such future representation.

● Breaching the restrictive covenants of his employment agreement.  (Doc. No. 183, at 9-10 (Count III), 12 (Count VI); Doc. No. 149, ¶ 25(d); Doc. No. 407, Ex. A.)

- • but the Court has concluded as a matter of law that all of the remaining clauses are unenforceable;

- • Loparex concedes it is not seeking damages regarding Hanson's alleged violation of the employee solicitation clause;

- • and also concedes it cannot identify any lost sales as a result of Hanson having taken a position with Mondi.

● Discovery abuses and document destruction.  (Doc. No. 183, at 13-15 (Count VII).)

- • but the Court has concluded that Loparex's relief for any alleged discovery abuses is properly by motion under Rule 37.

● Hanson conspired with Mondi.  (Doc. No. 183, at 15-16 (Count VIII), at 21-22 (Count V).)

- • but there is no evidence of any such conspiracy.

In sum, not only is Loparex not entitled to summary judgment on its claims, it has

failed even to identify any genuine issue of material fact that could warrant a trial on

those claims.  Accordingly, Hanson and Mondi are entitled to summary judgment on their cross-motions with respect to Loparex's counterclaims and third-party claims.  The remaining part of Loparex's motion seeks summary judgment on Hanson's claim for tortious interference with a business expectancy.

### D.     Loparex's Tortious Interference With Hanson's Business Expectancy

Hanson alleged that Loparex's refusal to consent to Hanson accepting Mondi's offer of employment improperly interfered with Hanson's expectation of working for Mondi.  (Doc. No. 10, at 7.)  Loparex contends that it did nothing to interfere with Hanson's employment opportunity with Mondi, as Mondi hired Hanson on August 10, 2009.  (Doc. No. 411, at 48.)  At the time Hanson originally added this claim in June 2009, however, the issue of whether the restrictive covenants would likely have precluded Hanson from working for Mondi was a valid issue.

In any event, Hanson now argues that Loparex's motion with respect to Hanson's remaining claim is unnecessary because that claim "was mooted by Judge Davis's Order holding that the non-compete agreement did not preclude him from going to work for Mondi."  (Doc. No. 424, at 22.)  As noted above, the January 20, 2010 Order ruled that the valid provisions of the employment agreement restricting Hanson after his departure from Loparex terminated as of August 9, 2009.  Accordingly, that agreement was no legal impediment to Hanson starting to work for Mondi on August 10, 2009.  Hanson's claim is thus moot, rendering this aspect of Loparex's motion moot.

**E.     Conclusion**

The January 10, 2010 Order granted summary judgment to Hanson on two of his three claims.  The third claim is now moot.  In addition, summary judgment has now been granted against Loparex on all of its counterclaims and third-party claims.  The only outstanding matters pertain to alleged discovery abuses and Rule 11 sanctions, which the Court will address in a separate Order.  Accordingly, a final judgment may now be entered in favor of Hanson and Mondi and against Loparex.

**III.   ORDER**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Loparex's motion for summary judgment [Doc. No. 362] is **DENIED IN PART** (insofar as it seeks summary judgment on its counterclaims and third-party claims) and **DENIED AS MOOT IN PART** (insofar as it seeks summary judgment on Hanson's claim for tortious interference with a business expectancy);

2.     Hanson's motion for summary judgment [Doc. No. 358] is **GRANTED**;

3.     Mondi's motion for summary judgment [Doc. No. 356] is **GRANTED**; and

4.     Loparex's motion for leave to submit the notarized signature page of Jack Taylor's Affidavit [Doc. No. 415] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  August 15, 2011                          s/ Susan Richard Nelson
                                                 SUSAN RICHARD NELSON
                                                 United States District Judge

45